UNITED STATES of America,

v.

Benjamin VILOSKI, Defendant.

No. 5:09–CR–418.

United States District Court,
N.D. New York.

Signed Oct. 16, 2014.

Richard S. Hartunian, Gwendolyn E. Carroll, Esq., Ass't United States Attorney, of Counsel, Syracuse, NY, United States Attorney for the Northern District of New York.

Harrington & Mahoney, Mark J. Mahoney, Esq., of Counsel, Buffalo, NY, for Defendant.

*MEMORANDUM–DECISION and ORDER*

DAVID N. HURD, District Judge.

## I. *INTRODUCTION*

Benjamin Viloski ("Viloski" or "defendant") was convicted in connection with a kickback and money laundering scheme which impacted Dick's Sporting Goods, Inc. ("DSG"), its shareholders, and various landlords, real estate developers, investors, property owners, and others involved in the development of new DSG stores. After a three-week trial in July 2011, a jury found Viloski guilty of: one count of conspiracy to commit mail and wire fraud (Count 1); two counts of mail fraud (Counts 2 and 5); one count of conspiracy to commit concealment money laundering and transactions in criminally derived property (Count 12); three counts of aiding and abetting concealment money laundering (Counts 13, 14, and 15); one count of aiding and abetting transactions in criminally derived property (Count 16); and one count of making false statements (Count 31). Viloski was acquitted of the remaining eleven counts in the Amended First Superseding Indictment: Counts 3, 4, 6, 7, 8, 9, 10, 11, 17, 18, and 19. Defendant's post-trial motions pursuant to Federal Rules of Criminal Procedure 29 and 33 were denied.

The indictment also contained a criminal forfeiture allegation seeking a money judgment in an amount "equal to the total amount of money involved in each offense of conviction, or conspiracy to commit such offense, for which the defendant(s) is convicted. In the absence of the forfeitable property, the United States will seek a money judgment." Consistent with that allegation, following his conviction, the United States of Government ("the Government") sought a Preliminary Order of Forfeiture as to Viloski.[1] Defendant opposed and the Government replied. A Preliminary Order of Forfeiture in the amount of $1,273,285.50 was entered against Viloski on November 28, 2011. It was preliminarily ordered that Viloski would be jointly and severally liable with convicted co-defendant Queri regarding Counts 1 and 12, and jointly and severally liable with convicted co-defendant Gosson regarding Count 1.

On January 13, 2012, Viloski was sentenced to a term of sixty months on each

---

1. Co-defendants Joseph Queri, Jr. ("Queri") and Gary Gosson ("Gosson") entered pleas of guilty pursuant to written plea agreements.

Queri entered a plea of guilty as to Counts 1, 10 and 12 of the First Superseding Indictment. ECF No. 172. Following his plea, a Preliminary Order of Forfeiture was entered against Queri on March 25, 2011, specifying a money judgment in the amount of $1,453,813.81. *Id.* 177. That forfeiture order became final upon Queri's sentencing on January 17, 2012. *Id.* 347. Queri was sentenced to a term of 41 months on each of Counts 1, 10 and 12 to be served concurrently; three years supervised release on each count to be served concurrently; and a $300 special assessment was imposed. He was ordered to pay restitution in the amount of $50,000 to COR Development jointly and severally with Viloski and Gosson; $250,000 to Hampshire Companies jointly and severally with Gosson;

and $25,000 to Classic Real Estate jointly and severally with Viloski. *Id.*

Gosson entered a plea of guilty as to Counts 1, 12 and 20 of the First Superseding Indictment. *Id.* 104. Following his plea, an Amended Preliminary Order of Forfeiture was entered against Gosson on March 25, 2011, specifying a money judgment in the amounts of $41,200 and $49,728. *Id.* 178. That forfeiture order became final upon Gosson's sentencing on January 18, 2012. *Id.* 358. Gosson was sentenced to a term of 24 months on each of Counts 1, 12 and 20 to be served concurrently; three years supervised release on each count to be served concurrently; and a $300 special assessment was imposed. He was ordered to pay restitution in the amount of $50,000 to COR Development jointly and severally with Viloski and Queri; and $250,000 to Hampshire Companies jointly and severally with Queri. *Id.*

of counts 1, 2, 5, 12, 13, 14, 15, 16 and 31 of the Amended First Superseding Indictment to be served concurrently and three years of supervised release on each count to be served concurrently. A $900 special assessment was imposed and restitution was ordered in the amount of $25,000 to Classic Real Estate jointly and severally with Viloski's co-defendant Queri and $50,000 to COR Development jointly and severally with co-defendants Queri and Gosson. Restitution was denied as to DSG. Pursuant to Federal Rule of Criminal Procedure 32.2(b)(3), the Preliminary Order of Forfeiture became final as to Viloski and he was ordered to forfeit to the United States all rights, title and interest in the items listed in the Preliminary Order of Forfeiture, namely $1,273,285.50. On the same day he was sentenced, defendant filed a notice of appeal as to his sentence and the forfeiture order. Judgment was entered against Viloski on January 18, 2012.

On February 4, 2014, the United States Court of Appeals for the Second Circuit issued a decision affirming defendant's conviction, sentence, and restitution but remanding for reconsideration of the forfeiture order. *United States v. Viloski*, 557 Fed.Appx. 28 (2d Cir.2014) (summary order). A Mandate was issued on May 30, 2014, and filed in the Northern District of New York on June 2, 2014. The Second Circuit rejected defendant's argument that the nearly $1.3 million imposed in forfeiture was not found "traceable" to the fraud counts and/or "involved in" the money laundering counts. *Id.* at 36. The Court found that "[t]he funds Viloski challenges were undoubtedly under his control at some point—indeed, they were necessarily under his control for him to 'launder' them, which the jury had already found beyond a reasonable doubt." *Id.* However, the Court remanded the forfeiture matter to consider the factors in *United States v.*

*Bajakajian*, 524 U.S. 321, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998), "to determine whether the forfeiture order violates the 'excessive fines' clause of the Eighth Amendment." *Viloski*, 557 Fed.Appx. at 36.

Following the filing of the Mandate, the parties briefed the issues relating to forfeiture as identified in the Second Circuit order.

## II. *BACKGROUND*

It is assumed the parties are intimately familiar with the facts of this 2009 case as it has proceeded through voluminous motions, plea agreements, plea hearings, and several trials. Accordingly, a full recitation of the facts will not be repeated here.

## III. *DISCUSSION*

The Government contends forfeiture of $1,273,285.50 is not grossly disproportional to the conspiracy, scheme to defraud and money laundering convictions, and thus not a violation of the Excessive Fines Clause. According to the Government, the forfeiture amount was conservatively calculated, reflecting only the kickback payments which constituted the proceeds of the offenses of conviction. Specifically, the forfeiture amount includes only those funds laundered by Viloski to Queri through Retail Development Network, Inc. ($999,535.50) and Shopping Center Real Estate ($273,750). Finally, according to the Government, the methodology underlying the forfeiture calculation for Viloski is the same as the methodology used for calculating the forfeiture for Queri and Gosson.

Defendant argues the court should entirely forego imposing a forfeiture, but in the alternative, any forfeiture should be apportioned and tailored to identifiable illicit gains, somewhere in the range be-

tween zero and $5,000. Viloski contends that he kept only funds which he had lawfully earned; DSG was not harmed as a result of the offense (and benefitted immeasurably from his and Queri's efforts); and Queri is the one who profited from what the Government argues is the ill-gotten gains in this case, namely the $1,273,285.50 that Queri received. He also argues that co-defendant Gosson's liability was limited to $41,200—the amount he "earned ... from his participation in the kickback and money-laundering conspiracies." ECF No. 276. According to Viloski, Gosson was required to repay only his own share of the funds directed to Queri, which were considered "proceeds" and "ill-gotten gains" because Gosson had done nothing to earn his share of those funds. By contrast, defendant contends he retained only funds which he earned legally and in good faith and his offenses were not in receipt of ill-gotten gains but in aiding and abetting Queri to keep the scheme a secret.

## A. *Applicable Law*

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. "The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality," and "[t]he amount of the forfeiture" sought by the Government "must bear some relationship to the gravity of the offense that it is designed to punish." *Bajakajian*, 524 U.S. at 334, 118 S.Ct. 2028 (citing *Austin v. United States*, 509 U.S. 602, 622–23, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993)); *United States v. Castello*, 611 F.3d 116, 120 (2d Cir.2010). "[A] punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense." *Bajakajian*, 524 U.S. at 334, 118 S.Ct. 2028.

The defendant bears the burden of showing that a forfeiture is unconstitutionally excessive. *Castello*, 611 F.3d at 120 (citing *United States v. Jose*, 499 F.3d 105, 108 (1st Cir.2007); *United States v. Ahmad*, 213 F.3d 805, 816 (4th Cir.2000)).

In *Bajakajian*, the Supreme Court articulated a test for determining whether a punitive forfeiture violates the Excessive Fines Clause. 524 U.S. at 337–39, 118 S.Ct. 2028. The defendant in *Bajakajian* was an international traveler who, on one occasion, failed to declare that he was carrying in excess of $10,000 out of the United States, in violation of 31 U.S.C. § 5316(a)(1)(A). *Id.* at 324–25, 118 S.Ct. 2028. The Government sought forfeiture of the entire $357,144 he was carrying, pursuant to 18 U.S.C. § 982(a)(1), which provides that a person convicted of willfully violating § 5316 shall forfeit "any property ... involved in such an offense." *Id.* at 325, 118 S.Ct. 2028. The Supreme Court held that forfeiture of the $357,144 would be grossly disproportionate to the offense and would therefore violate the Excessive Fines Clause of the Eighth Amendment. *Id.* at 337, 118 S.Ct. 2028. The Court reasoned that the crime was solely a reporting offense, was unrelated to any other illegal activities, and the money Bajakajian was carrying was the proceeds of legal activity. *Id.* at 337–38, 118 S.Ct. 2028. Further, the defendant did not fit into the class of persons for whom the forfeiture statute was principally designed—he was "not a money launderer, a drug trafficker, or a tax evader." *Id.* at 338, 118 S.Ct. 2028. Moreover, the maximum sentence that could have been imposed on the defendant was six months and a $5,000 fine. *Id.* Finally, the Court found that the harm caused by Bajakajian was "minimal"; "[f]ailure to report his currency affected only one party, the Government, and in a relatively minor way. There was no fraud

on the United States, and respondent caused no loss to the public fisc." *Id.* at 339, 118 S.Ct. 2028.

Following *Bajakajian*, district courts must consider these factors laid out by the Supreme Court to determine whether a proposed forfeiture violates the Excessive Fines Clause: (1) the essence of the crime and its relation to other criminal activity; (2) whether the defendant fits into the class of persons for whom the statute was principally designed; (3) the maximum sentence and fine that could have been imposed; and (4) the nature of the harm caused by the defendant's conduct. *Bajakajian*, 524 U.S. at 337–39, 118 S.Ct. 2028; *United States v. Varrone*, 554 F.3d 327, 331 (2d Cir.2009).

### B. *Analysis*

#### 1. *Essence of the Crime and its Relation to Other Criminal Activity*

 First, the essence of Viloski's crimes and their relation to other criminal activity weigh in favor of finding the forfeiture proportional. Viloski was convicted of conspiracy to commit mail and wire fraud, substantive mail fraud, conspiracy to commit money laundering, substantive money laundering, and transactions in criminally derived property. These are serious crimes which took place over the course of years and involved an elaborate scheme to defraud. The essence of these crimes are inherently fraudulent. Further, the money subject to forfeiture is the proceeds of that illegal activity. By contrast, the defendant in *Bajakajian* was convicted solely of a one-time, reporting offense. The essence of his crime was a willful failure to report the removal of currency from the United States; it was permissible for him to transport currency out of the country so long as he reported it. The serious and extensive nature of

Viloski's offenses thus militates strongly in favor of the forfeiture.

#### 2. *Class of Persons for Whom the Statutes were Principally Designed*

Second, whether the defendant fits into the class of persons for whom the statutes were principally designed also weighs in favor of finding the forfeiture proportional. "[T]he mail and wire fraud statutes are designed to prevent the use of interstate communications facilities—the mails and wires—to affect a broad range of fraudulent schemes to obtain money or property through false pretenses, representations, or promises." *United States v. Finazzo*, 2014 WL 3818628, at *33 (E.D.N.Y. Aug. 1, 2014). The purpose of the money-laundering statute is to "reach commercial transactions intended, at least in part, to disguise (1) the relationship of the item purchased with the person providing the proceeds, and (2) that the proceeds used to make the purchase were obtained from illegal activities"; "outlaw the structuring of financial transactions so as to avoid currency reporting requirements or to conceal the source of the funds"; "outlaw the promotion of unlawful activity through financial transactions involving the proceeds of a specified unlawful activity"; and "close a gap in the criminal law with respect to the postcrime hiding of the ill-gotten gains." *See* 53A AM. JUR. 2D. *Money* § 60 (2014).

As demonstrated at trial, Viloski engaged in an extended course of conduct designed to defraud DSG and its shareholders, various landlords, real estate developers, investors, property owners, and others involved in the development of new DSG stores. Thus he was able to obtain money and property, and deprive DSG of potentially valuable information that could impact on its economic decisions, all by means of materially false and fraudulent

pretenses, representations, and promises, and then launder the proceeds of that scheme to defraud. Those actions are well within the scope of fraudulent conduct prohibited by the above statutes. Therefore, Viloski falls comfortably within the class of persons for whom the statutes in question were principally designed. By contrast, the defendant in *Bajakajian* did not fit into the class of persons for whom the statute at issue was designed; he was not a money launderer, a drug trafficker, or a tax evader. 524 U.S. at 338, 118 S.Ct. 2028. This factor weighs in favor of full forfeiture.

### 3. *Maximum Sentence and Fine Under the Guidelines*

The third factor weighs in favor of a finding of proportionality as the forfeiture is proportionate to the maximum by statute and recommended under the United States Sentencing Guidelines ("U.S.S.G."). In *Bajakajian*, the maximum statutory sentence was five years' imprisonment and a $250,000 fine, which the Supreme Court observed "suggests that [Congress] did not view the reporting offense as a trivial one." 524 U.S. at 339 n. 14, 118 S.Ct. 2028. But "since the Guideline penalty applicable to Bajakajian was only six months' imprisonment and a $5000 fine, the level of culpability was found to be 'minimal.'" *Castello*, 611 F.3d at 123 (internal citations omitted). The Supreme Court in *Bajakajian* reasoned that because "the maximum [Guideline] fine and Guideline sentence to which [the defendant] was subject were but a fraction of the penalties authorized [by statute]," the disparity "undercuts any argument based solely on the statute, because [the Guideline sentence] show[s] that [the defendant's] culpability relative to other potential violators of the reporting provision—tax evaders, drug kingpins, or money launderers, for example—is small

indeed." 524 U.S. at 339 n. 14, 118 S.Ct. 2028.

In contrast, the statutory maximum penalties faced by Viloski were as follows: on Counts 1 and 31, sixty months on each count; Counts 2, 5, 12, 13, 14 and 15, 240 months on each count; and Count 16, 120 months. The statutory maximum was $3,250,000 in fines. However, the proposed forfeiture must also be compared to the Guidelines range. *See Castello*, 611 F.3d at 123 ("[T]he relevant metric is the top of the Guidelines for the fine and for imprisonment."). The Guidelines range of imprisonment for Viloski was 108 to 135 months and the maximum Guidelines fine was $500,000, pursuant to U.S.S.G. § 5E1.2(c)(4). In *Bajakajian*, the disparity between the maximum statutory penalties and the Guidelines range demonstrated the defendant's lack of culpability compared to other offenders. The sentence Viloski received of sixty months and $1,273,285.50 in forfeiture was not disproportionate when compared with the Guidelines sentence and maximum fine and the sentence of forty one months and $1,453,813.81 in forfeiture received by the principal co-defendant Queri, who plead guilty. This weighs in favor of the forfeiture.

### 4. *Nature of the Harm Caused*

Finally, the forfeiture amount is proportionate to the harm caused by Viloski's conduct. Unlike *Bajakajian*, which was a victimless offense, Viloski's conduct, as the testimony of numerous witnesses at trial made clear, impacted DSG, its shareholders, and various landlords, real estate developers, investors, property owners, and others involved in the development of new DSG stores. Even though restitution was denied to DSG, there was extensive harm caused by the large scale fraudulent scheme perpetrated by Viloski and his co-

defendants. Moreover, it is noted that a finding that Viloski's conduct caused a substantial harm is not necessary to a determination that the forfeiture amount is proportional. *See United States v. Elfgeeh,* 515 F.3d 100, 139 (2d Cir.2008) ("Although the record is silent as to the fourth factor, the other three reveal that the order for a forfeiture of $22,435,467 is not disproportional.").

In conclusion, the forfeiture is not grossly disproportional to the offenses of conviction based on the above factors.

### 5. *Other Factors Not Considered*

Viloski makes compelling arguments in addition to the four *Bajakajian* factors as to why a forfeiture of $1,273,285.50 is excessive. Defendant is in poor health and suffers from several physical ailments. He underwent double bypass surgery in September 2009 and has significant limitations from that surgery. He was also diagnosed with cancer in 2004 and following surgery, experienced prolonged complications. He has not worked full time since his heart surgery in 2009 and was receiving Social Security Disability at the time of his sentencing. Moreover, as set forth in the financial status affidavit accompanying defendant's memorandum, as a direct result of his conviction, incarceration, and costs of his defense, defendant contends he has no assets with which to pay any forfeiture, and there is little prospect that he will be able to pay any forfeiture amount in the future considering his age, poor health, and physical and civic disabilities. Defendant also points out his lack of culpability and lack of profit from the scheme compared to co-defendant Queri. Queri pleaded guilty and Viloski was convicted at trial. A forfeiture order was entered against Queri in the amount of $1,453,813.81 and the Government seeks $1,273,285.50 against Viloski, although the evidence at trial established that Queri lead the scheme and profited immensely. Finally, defendant was already ordered to pay $75,000 in restitution in this matter.

Although sympathetic to Viloski's poor health, lack of means to pay the forfeiture, and agreeing that Viloski's culpability is less than that of Queri's although ordered to pay nearly the same in forfeiture, these factors are not of significance in determining whether the proposed forfeiture violates the Excessive Fines Clause and cannot be considered. The Supreme Court limited the inquiry to the four *Bajakajian* factors. The jury's verdict reflected Viloski's culpability and role in the scheme to defraud and other counts and the amount of the forfeiture bears a sufficient relationship to the gravity of the offenses that it seeks to punish.

### IV. *CONCLUSION*

Based on the above factors laid out by the Supreme Court in *Bajakajian,* the forfeiture is not grossly disproportional to the conspiracy, scheme to defraud and money laundering convictions, and thus not a violation of the Excessive Fines Clause. Accordingly, forfeiture in the amount of $1,273,285.50 does not violate the Eighth Amendment.

Therefore, it is

ORDERED that

1. Defendant's objection to the final order of forfeiture in the amount of $1,273,285.50 is DISMISSED; and

2. The final order of forfeiture against defendant Benjamin Viloski in the amount of $1,273,285.50 entered on January 18, 2012 remains.

IT IS SO ORDERED.