14-4176-cr
*United States v. Viloski*

# In the
# United States Court of Appeals
## for the Second Circuit

---

AUGUST TERM 2015

No. 14-4176-cr

UNITED STATES OF AMERICA,

*Appellee,*

v.

BENJAMIN VILOSKI,

*Defendant-Appellant.*[*]

---

On Appeal from the United States District Court
for the Northern District of New York

---

ARGUED: OCTOBER 22, 2015
DECIDED: FEBRUARY 17, 2016

---

[*] The Clerk of Court is directed to amend the caption of this appeal as indicated above.

Before: KEARSE, WALKER, AND CABRANES, *Circuit Judges*.

———

The question presented is whether the criminal forfeiture imposed on defendant-appellant Benjamin Viloski ("Viloski") violates the Excessive Fines Clause of the Eighth Amendment. Viloski argues that the United States District Court for the Northern District of New York (David N. Hurd, *Judge*) erred when it declined to consider Viloski's age, health, and financial condition in determining whether its previously issued forfeiture order of $1,273,285.50 was unconstitutionally excessive. Viloski also argues that even if the District Court properly ignored his personal circumstances, the forfeiture is nonetheless unconstitutional in light of the four factors described in *United States v. Bajakajian*, 524 U.S. 321 (1998).

We hold that a court reviewing a criminal forfeiture under the Excessive Fines Clause may consider—as part of the proportionality determination required by *Bajakajian*—whether the forfeiture would deprive the defendant of his future ability to earn a living. We further hold, however, that courts should not consider a defendant's personal circumstances as a distinct factor. Applying these conclusions to the present case, we conclude that the challenged forfeiture is constitutional because it is not "grossly disproportional" to the gravity of Viloski's offenses. We therefore **AFFIRM** the October 16, 2014 Order of the District Court.

PETER GOLDBERGER (Pamela A. Wilk, *on the brief*), Ardmore, PA, *for Defendant-Appellant*.

GWENDOLYN E. CARROLL (Steven D. Clymer, *on the brief*), Assistant United States Attorneys, *for* Richard S. Hartunian, United States Attorney for the Northern District of New York, Syracuse, NY, *for Appellee*.

JOSÉ A. CABRANES, *Circuit Judge*:

The question presented is whether the criminal forfeiture imposed on defendant-appellant Benjamin Viloski ("Viloski") violates the Excessive Fines Clause of the Eighth Amendment. Viloski argues that the United States District Court for the Northern District of New York (David N. Hurd, *Judge*) erred when it declined to consider Viloski's age, health, and financial condition in determining whether its previously issued forfeiture order of $1,273,285.50 was unconstitutionally excessive. Viloski also argues that even if the District Court properly ignored his personal circumstances, the forfeiture is nonetheless unconstitutional in light of the four factors described in *United States v. Bajakajian*, 524 U.S. 321 (1998).

We hold that a court reviewing a criminal forfeiture under the Excessive Fines Clause may consider—as part of the proportionality

determination required by *Bajakajian*—whether the forfeiture would deprive the defendant of his future ability to earn a living. We further hold, however, that courts should not consider a defendant's personal circumstances as a distinct factor. Applying these conclusions to the present case, we determine that the challenged forfeiture is constitutional because it is not "grossly disproportional" to the gravity of Viloski's offenses. We therefore **AFFIRM** the October 16, 2014 Order of the District Court.

## I. BACKGROUND

Viloski was a lawyer and real-estate broker who worked with Dick's Sporting Goods ("DSG") on a number of development projects.[1] From 1998 through 2005, he participated in a kickback scheme involving the construction of new DSG stores, in which developers or landlords paid "consulting" fees—sometimes in exchange for work never performed—to Viloski in his capacity as DSG's broker. Viloski passed all or part of each payment to codefendant Joseph Queri, Jr. ("Queri"), a senior DSG executive, who took the payments without DSG's knowledge. Viloski sometimes paid Queri through a real-estate company owned by codefendant Gary Gosson ("Gosson").

---

[1] Because Viloski's appeal follows his conviction by a jury, we must view the evidence "in the light most favorable to the Government." *Evans v. United States*, 504 U.S. 255, 257 (1992); *accord United States v. Weingarten*, 632 F.3d 60, 62 (2d Cir. 2011).

4

In 2009, Viloski was charged in a twenty-count indictment related to these activities. After a three-week trial, a jury convicted him of one count of conspiracy to commit mail and wire fraud, two substantive counts of mail fraud, one count of conspiracy to commit money laundering, three counts of aiding and abetting money laundering, one count of aiding and abetting transactions in criminally derived property, and one count of making false statements. He was acquitted on the remaining counts.

On January 13, 2012, the District Court sentenced Viloski principally to a below-Guidelines term of five years' imprisonment and a three-year term of supervised release. The Court also ordered Viloski to pay a total of $75,000 in restitution to two developers and—most relevant here—to forfeit $1,273,285.50, which equaled the amount of funds Viloski had acquired from landlords and developers, laundered through two entities he controlled, and passed on to Queri.[2] The District Court ordered forfeiture pursuant to 18 U.S.C. § 982(a)(1), the criminal forfeiture statute; 18 U.S.C. § 981(a)(1)(C), the civil forfeiture statute; and 28 U.S.C. § 2461(c), which "integrate[s § 981(a)(1)(c)] into criminal proceedings," *United States v. Contorinis*, 692 F.3d 136, 145 n.2 (2d Cir. 2012).

Viloski appealed to this Court, which affirmed his conviction and sentence but remanded the case to the District Court to

---

[2] Viloski is jointly and severally liable with Queri for the forfeiture related to two counts, and jointly and severally liable with Gosson for the forfeiture related to a third count.

determine whether its forfeiture order violated the Excessive Fines Clause, U.S. Const. amend. VIII.[3] *United States v. Viloski*, 557 F. App'x 28, 36 (2d Cir. 2014) ("*Viloski I*"). We specifically directed the District Court to evaluate the forfeiture in light of *Bajakajian*, 524 U.S. at 321.

On remand, the District Court interpreted *Bajakajian* as requiring courts to consider the following four factors, known as the "*Bajakajian* factors," in determining whether a challenged forfeiture violates the Excessive Fines Clause:

> (1) the essence of the crime and its relation to other criminal activity; (2) whether the defendant fits into the class of persons for whom the statute was principally designed; (3) the maximum sentence and fine that could have been imposed; and (4) the nature of the harm caused by the defendant's conduct.

*United States v. Viloski*, 53 F. Supp. 3d 526, 530 (N.D.N.Y. 2014).

Viloski agreed that these factors were relevant but argued that the Court should also consider his age, "poor health,"[4] "physical and civic disabilities," and inability to pay the forfeiture. *Id.* at 532.

---

[3] The Eighth Amendment of the U.S. Constitution provides that "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

[4] The District Court noted that Viloski "is in poor health and suffers from several physical ailments," including complications from double bypass surgery in September 2009 and a cancer diagnosis in 2004. *Viloski*, 53 F. Supp. 3d at 532.

Viloski also emphasized "his lack of culpability and lack of profit from the scheme compared to co-defendant Queri." *Id.* Although the District Court expressed sympathy for some of these considerations, it declared them irrelevant, because "[t]he Supreme Court [had] limited the inquiry to the four *Bajakajian* factors." *Id.* Accordingly, after considering only those factors, the District Court concluded that the forfeiture did not violate the Eighth Amendment. *Id.* This appeal followed.

## II. DISCUSSION

The Supreme Court first applied the Excessive Fines Clause in *United States v. Bajakajian*, 524 U.S. 321 (1998), which established a two-step inquiry for determining whether a financial penalty is excessive under the Eighth Amendment.[5] At the first stage, we determine whether the Excessive Fines Clause applies at all. *Id.* at 334. If we conclude that it does, we proceed to the second step and determine whether the challenged forfeiture is unconstitutionally excessive. *Id.* In applying *Bajakajian*, we determine *de novo* "whether a fine is constitutionally excessive," although we must accept the District Court's factual findings "unless clearly erroneous." *Id.* at 336

---

[5] The Supreme Court had previously discussed the Excessive Fines Clause in *Browning-Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257 (1989), which held that the clause does not apply to awards of punitive damages in suits between private parties, and *Austin v. United States*, 509 U.S. 602 (1993), which held that the clause applies to *in rem* civil-forfeiture proceedings. *Bajakajian* was the first time the Court invalidated a fine as excessive under the Eighth Amendment.

& n.10. "The burden rests on the defendant to show the unconstitutionality of the forfeiture." *United States v. Castello*, 611 F.3d 116, 120 (2d Cir. 2010).[6]

## A. Step One: Does the Excessive Fines Clause Apply?

### 1. Legal Framework

First, we must determine whether the forfeiture at issue constitutes "a 'fine' within the meaning of the Excessive Fines Clause." *Bajakajian*, 524 U.S. at 334. That clause applies only to those forfeitures that may be characterized, at least in part, as "punitive"— *i.e.*, forfeitures for which a defendant is personally liable. *Id.* at 327– 28; *see also United States v. An Antique Platter of Gold*, 184 F.3d 131, 139 (2d Cir. 1999) (describing as "punitive" those forfeitures "imposed at the culmination of a criminal proceeding that required a conviction of the underlying felony and could not have been imposed upon an innocent party"). In contrast, purely "remedial" forfeitures—*i.e.*, those *in rem* forfeitures intended not to punish the defendant but to compensate the Government for a loss or to restore property to its

---

[6] The Government urges us to apply "plain error" review to Viloski's argument about the sufficiency of the *Bajakajian* factors, because he did not present it below. Gov't Br. 16–21. The requirement that litigants raise all possible arguments before the district court serves principally to "give[ ] the district court the opportunity to consider and resolve" questions in the first instance. *See Puckett v. United States*, 556 U.S. 129, 134 (2009). Here, the District Court not only considered the sufficiency of the *Bajakajian* factors but found that Viloski made "compelling arguments" on that topic. 53 F. Supp. 3d at 532. We accordingly consider the question *de novo*. *See Bajakajian*, 524 U.S. at 336 & n.10.

rightful owner—fall outside the scope of the Excessive Fines Clause. *Bajakajian*, 524 U.S. at 329; *see also Paroline v. United States*, 134 S. Ct. 1710, 1726 (2014) ("The primary goal of restitution is remedial or compensatory, but it also serves punitive purposes. That may be sufficient to bring it within the purview of the Excessive Fines Clause." (internal quotation marks, citations, and alteration omitted)).

## 2. Application

As we concluded in *Viloski I*, the Excessive Fines Clause applies here. *See* 557 F. App'x at 36. The challenged forfeiture—which the District Court expressly linked to specific offenses—fits easily within the definition of punitive forfeitures we just expounded: it was "imposed at the culmination of a criminal proceeding that required a conviction of the underlying felony," and it "could not have been imposed upon an innocent party." *Cf. Platter of Gold*, 184 F.3d at 139.[7]

---

[7] The Government argues that the challenged forfeiture is necessarily constitutional because it "involves only the proceeds of criminal conduct." Gov't Br. 32. Revealingly, its brief cites only out-of-circuit cases, half of which predate *Bajakajian*. One of the two post-*Bajakajian* cases the Government cites, *United States v. Betancourt*, 422 F.3d 240, 250 & n.5 (5th Cir. 2005), distinguished *Bajakajian* based on a "drug proceeds" exception to the Excessive Fines Clause. *Betancourt* and analogous cases, however, essentially characterized drug proceeds as "guilty property," forfeiture of which was *in rem* and purely remedial. *See id.* at 250 ("The forfeiture of drug proceeds does not constitute punishment . . . ." (alteration and internal quotation marks omitted)); *cf. United States v. Sum of $185,336.07 U.S. Currency Seized from Citizen's Bank Account L7N01967*, 731 F.3d 189, 194 (2d Cir. 2013) ("[T]he forfeiture of 'guilty property,' such as illicit drug proceeds, has been traditionally regarded as non-punitive . . . ." (some internal quotation marks

## B. Step Two: Is the Forfeiture Unconstitutionally Excessive?

### 1. Legal Framework

If we determine that a forfeiture is punitive, we must proceed to step two, which asks whether the forfeiture is unconstitutionally excessive. A forfeiture is unconstitutionally excessive "if it is grossly disproportional to the gravity of a defendant's offense." *Bajakajian*, 524 U.S. at 334. Although *Bajakajian* did not provide a test for gross disproportionality, we have interpreted that decision as requiring us to consider the following four factors, which have become known as the "*Bajakajian* factors":

> (1) the essence of the crime of the defendant and its relation to other criminal activity, (2) whether the defendant fits into the class of persons for whom the statute was principally designed, (3) the maximum sentence and fine that could have been imposed, and (4) the nature of the harm caused by the defendant's conduct.

*United States v. George*, 779 F.3d 113, 122 (2d Cir. 2015) (quoting *Castello*, 611 F.3d at 120).

---

omitted)). Here, in contrast, the Government has moved not against the proceeds themselves—which Viloski transferred to Queri in the very act of money laundering—but against Viloski personally.

The principal question in this appeal is whether these factors are exhaustive—a question we have never addressed directly. Our cases interpreting *Bajakajian* have neither added to the four factors nor described them as comprehensive. *See, e.g.*, *George*, 779 F.3d at 122 ("Consistent with *Bajakajian*, this court has identified the following factors as relevant to the proportionality assessment . . . ."); *Castello*, 611 F.3d at 120 ("Four factors, distilled from *Bajakajian*, guide our analysis . . . ."). In some cases, however, we have implicitly cautioned against applying the *Bajakajian* factors too rigidly. *See, e.g.*, *United States v. Collado*, 348 F.3d 323, 328 (2d Cir. 2003) ("*Among* the factors that the [Supreme] Court considered . . . ." (emphasis supplied)); *accord United States v. Varrone*, 554 F.3d 327, 331 (2d Cir. 2009); *see also United States v. Elfgeeh*, 515 F.3d 100, 139 (2d Cir. 2008) (determining whether a forfeiture was excessive based on three of the factors when the record was silent as to the fourth).

Our unwillingness in past cases to describe the *Bajakajian* factors as exhaustive reflects *Bajakajian* itself, which never prescribed those factors as a rigid test.[8] To the contrary, the Supreme Court expressly noted that the defendant in that case had "not argue[d] that

---

[8] The Supreme Court often declines to provide definitive tests when interpreting constitutional provisions for the first time. *See, e.g.*, *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008) ("[S]ince this case represents this Court's first in-depth examination of the Second Amendment, one should not expect it to clarify the entire field . . . ."); *Austin*, 509 U.S. at 622–23 (declining to adopt a test for whether an *in rem* forfeiture is unconstitutionally excessive, because "[p]rudence dictates that we allow the lower courts to consider that question in the first instance").

his wealth or income [were] relevant to the proportionality determination or that full forfeiture would deprive him of his livelihood." *Bajakajian*, 524 U.S. at 340 n.15. And several circuits have recognized the potential relevance of additional factors.[9]

Indeed, *Bajakajian* itself leads us to conclude that one additional factor is especially important. The opinion emphasizes that the Excessive Fines Clause grew out of the English constitutional tradition, including Magna Carta, which required that a fine "should not deprive a wrongdoer of his livelihood." *Bajakajian*, 524 U.S. at 335; *see also Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 269, 271 (1989) (noting Magna Carta's requirement that an "amercement"—a payment to the Crown as a penalty for some offense—"not be so large as to deprive [an offender] of his livelihood"). As the First Circuit has recognized, hostility to livelihood-destroying fines became "deeply rooted" in Anglo-American constitutional thought and played an important role in shaping the Eighth Amendment. *United States v. Levesque*, 546 F.3d 78, 84 (1st Cir. 2008). In light of this strong constitutional pedigree, it

---

[9] *See, e.g., Collins v. S.E.C.*, 736 F.3d 521, 526–27 (D.C. Cir. 2013) (adopting the four-factor test we specified in *Collado*, 348 F.3d at 328, but noting that "the four factors derived from *Bajakajian* hardly establish a discrete analytic process"); *United States v. Dodge Caravan Grand SE/Sport Van, VIN # 1B4GP44G2YB7884560*, 387 F.3d 758, 763 (8th Cir. 2004); *United States v. Carpenter*, 317 F.3d 618, 628 (6th Cir. 2003) ("While these factors were clearly fact-specific to the case before the Court, they are instructive as to the type of analysis that must be undertaken in assessing the gravity of the offense."), *reh'g granted, judgment vacated* (Apr. 14, 2003), *opinion reinstated in relevant part on reh'g,* 360 F.3d 591 (6th Cir. 2004).

seems unlikely that the *Bajakajian* Court meant to preclude courts from considering whether a forfeiture would deprive an offender of his livelihood.

We therefore hold that, when analyzing a forfeiture's proportionality under the Excessive Fines Clause, courts may consider—in addition to the four factors we have previously derived from *Bajakajian*—whether the forfeiture would deprive the defendant of his livelihood, *i.e.*, his "future ability to earn a living," *see Levesque*, 546 F.3d at 85.[10]

In so holding, we heed the Supreme Court's instruction that "the test for the excessiveness of a punitive forfeiture involves *solely* a proportionality determination." *Bajakajian*, 524 U.S. at 333–34 (emphasis supplied).[11] Whether a forfeiture would destroy a

---

[10] As we note below, our test differs somewhat from the First Circuit's. *See* note 12 and accompanying text, *post*.

[11] We take this opportunity to note that there is a significant difference between a district court's role in determining the appropriate length of a sentence and its role in ordering a criminal forfeiture. In general, a sentencing court is empowered by statute to consider a wide range of factors when determining what sentence to impose. *See, e.g.*, 18 U.S.C. § 3553(a) (requiring a court to consider factors such as "the nature and circumstances of the offense and the history and characteristics of the defendant"); *id.* § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."). In the case of forfeiture, however, once a court determines that property sought by the government was "involved in" or "traceable to" property involved in money laundering, for example, the court "shall" order that such property be forfeited. *Id.* § 982(a)(1). 28 U.S.C. § 2461(c) includes similar mandatory language. As long as

13

defendant's livelihood is a component of the proportionality analysis, not a separate inquiry.[12] Accordingly, a forfeiture that deprives a defendant of his livelihood might nonetheless be constitutional, depending on his culpability or other circumstances.[13] Moreover, courts need not consider this fifth factor in all cases. Indeed, neither *Bajakajian* nor our previous cases have done so. We hold only that the proportionality determination required by *Bajakajian* is sufficiently flexible to permit such consideration.

We also emphasize that asking whether a forfeiture would destroy a defendant's *future* livelihood is different from considering as a discrete factor a defendant's *present* personal circumstances, including age, health, and financial situation. While hostility to livelihood-destroying fines is deeply rooted in our constitutional tradition, consideration of personal circumstances is not. *See*

---

the factual predicate for the application of these statutes has been satisfied, therefore, a district court has no discretion not to order forfeiture in the amount sought. The court's only role is to conduct the gross disproportionality inquiry required by *Bajakajian. Cf. Bajakajian*, 524 U.S. at 339 n.11 (declining to address "whether a court may disregard the terms of a statute that commands full forfeiture").

[12] Here we part ways with the First Circuit. *See Levesque*, 546 F.3d at 85 (adopting a three-factor test and requiring a separate inquiry as to whether a forfeiture would deprive a defendant of his livelihood).

[13] If the Eighth Amendment permits the Government to end some offenders' lives, *see, e.g.*, *Gregg v. Georgia*, 428 U.S. 153 (1976), it surely permits the Government to destroy other offenders' livelihoods.

*Bajakajian*, 524 U.S. at 335–36 (noting that Magna Carta "required only that amercements (the medieval predecessors of fines) should be proportioned to the offense and that they should not deprive a wrongdoer of his livelihood"); *cf. San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 22 (1973) (noting in the equal protection context that no "constitutional mandate" requires judges to consider "the defendant's ability to pay" a fine).

We are mindful of the Supreme Court's admonition that "judgments about the appropriate punishment for an offense belong in the first instance to the legislature." *Bajakajian*, 524 U.S. at 336. Our role in reviewing criminal forfeitures is solely to examine them for gross disproportionality; in other respects, we must defer to Congress. *See id.*; *Solem v. Helm*, 463 U.S. 277, 290 nn. 16 & 17 (1983). Bearing that limited role in mind, we hold that courts may not consider as a discrete factor a defendant's personal circumstances, such as age, health, or present financial condition, when considering whether a criminal forfeiture would violate the Excessive Fines Clause.[14] In so holding, we are in accord with every sister circuit that has addressed the question directly.[15]

---

[14] We make no pronouncement as to civil forfeitures. *See George*, 779 F.3d at 123 n.4 (noting the difference between civil and criminal forfeitures); *von Hofe v. United States*, 492 F.3d 175, 184–86 (2d Cir. 2007) (same).

[15] Our approach aligns most closely with that of the First Circuit. *See United States v. Fogg*, 666 F.3d 13, 19 (1st Cir. 2011). The Eighth, Ninth, and Eleventh Circuits have also held that the Eighth Amendment bars inquiry into a defendant's personal circumstances when a court reviews a criminal forfeiture,

A contrary interpretation would conflict with one of Congress's basic premises in providing for criminal forfeitures: that forfeitures should be "concerned not with how much an individual has but with how much he received in connection with the commission of the crime." *See United States v. Awad*, 598 F.3d 76, 78 (2d Cir. 2010) (internal quotation marks omitted). Such an interpretation would be untenable in view of the Supreme Court's insistence that legislatures have the primary responsibility—subject, of course, to constitutional constraints—for "determining the types and limits of punishments for crimes." *Bajakajian*, 524 U.S. at 336 (internal quotation marks omitted).[16]

It is possible, of course, "that a person's health and financial condition" might "bear on his ability to make a living." *See* Def.

---

although those circuits have not distinguished such an inquiry from the question of whether a forfeiture would destroy a defendant's livelihood. *See United States v. Smith*, 656 F.3d 821, 828 (8th Cir. 2011) ("A defendant's inability to satisfy a forfeiture at the time of conviction, in and of itself, is not at all sufficient to render a forfeiture unconstitutional, nor is it even the correct inquiry." (quoting *Levesque*, 546 F.3d at 85) (alteration omitted)); *United States v. Seher*, 562 F.3d 1344, 1371 (11th Cir. 2009) ("We do not take into account the impact the fine would have on an individual defendant."); *United States v. Dubose*, 146 F.3d 1141, 1146 (9th Cir. 1998) ("[A]n Eighth Amendment gross disproportionality analysis does not require an inquiry into the hardship the sanction may work on the offender."); *see also United States v. Dicter*, 198 F.3d 1284, 1292 n.11 (11th Cir. 1999) (declining to consider the impact of a forfeiture on a defendant's livelihood because "we do not take into account the personal impact of a forfeiture on the specific defendant").

[16] In this context, we note that Congress has authorized the Attorney General to remit forfeitures "on the grounds of hardship to the defendant." *See Levesque*, 546 F.3d at 85.

16

Reply Br. 6. Personal circumstances might thus be *indirectly* relevant to a proportionality determination, to the extent that those circumstances, in conjunction with the challenged forfeiture, would deprive the defendant of his livelihood. Our holding bars only the separate consideration of personal circumstances as a distinct factor.

## 2. Application

In light of the framework we have described, we now consider whether Viloski's forfeiture was unconstitutionally excessive. In doing so, we are mindful of *Bajakajian*'s admonition "that any judicial determination regarding the gravity of a particular criminal offense will be inherently imprecise." 524 U.S. at 336. Therefore, although we review the constitutionality of the challenged forfeiture *de novo*, we may invalidate it only if it "is *grossly* disproportional to the gravity of the defendant's offense." *Id.* at 337 (emphasis supplied); *see also United States v. Blackman*, 746 F.3d 137, 144 (4th Cir. 2014) ("[T]he *Bajakajian* test is highly deferential [to the legislature].").

We begin with the four "traditional" *Bajakajian* factors. *First*, we consider "the essence of [Viloski's] crime . . . and its relation to other criminal activity." *Castello*, 611 F.3d at 120 (internal quotation marks omitted). The essence of Viloski's crime "was no one-time failure to report otherwise legal activity as in *Bajakajian*," *see George*, 779 F.3d at 123. Rather, Viloski engaged in a multi-year conspiracy involving repeated instances of money laundering, mail fraud, wire fraud, and related offenses. *Viloski*, 53 F. Supp. 3d at 530. Although Viloski insists on his relative lack of culpability, his "willful

17

participation" in that conspiracy, even if less egregious than that of his codefendants, is sufficient to support the forfeiture. *See United States v. Sabhnani*, 599 F.3d 215, 263 (2d Cir. 2010) (noting that we have upheld a civil forfeiture against a building owner who was "willfully blind" to the fact that the building was used to facilitate drug trafficking (internal quotation marks omitted)); *see also United States v. Jalaram, Inc.*, 599 F.3d 347, 356 (4th Cir. 2010) ("[T]hat [the defendant] may have received only a small share of the proceeds, in and of itself, does not demonstrate that it played a minor role in the conspiracy. That fact establishes only that [the defendant's] participation in the conspiracy was not lucrative . . . .").

*Second*, we consider "whether [Viloski] fits into the class of persons for whom the statute[s] [under which he was punished were] principally designed." *Castello*, 611 F.3d at 122 (alteration and internal quotation marks omitted). Viloski fits squarely within the class of persons for whom the federal mail- and wire-fraud and money-laundering statutes were designed—namely, those who use facilities of interstate or foreign commerce to engage in fraudulent schemes and financial transactions and then seek to conceal or disguise the nature of the proceeds of the fraud.

*Third*, we consider "the maximum sentence and fine that could have been imposed," looking especially to the applicable Guidelines penalties. *Id.* at 123 (internal quotation marks omitted); *cf. Bajakajian*, 524 U.S. at 338–39 & n.14 (noting that the maximum statutory penalties "are certainly relevant evidence" of "an offense's gravity," but looking first to the Guidelines). Here, the Guidelines range for

imprisonment was 108 to 135 months, and the maximum Guidelines fine was $500,000. These figures suggest substantial culpability and support the conclusion that the challenged forfeiture is constitutional. We also note that the statutory maximum fine was $3,250,000—more than two-and-a-half times the $1,273,285.50 forfeiture—which suggests that Congress did not view offenses like Viloski's as trivial, and thus also weighs strongly in favor of the forfeiture's constitutionality. *See George*, 779 F.3d at 123–24 (finding that the third *Bajakajian* factor "points to no disproportionality," much less gross disproportionality, even where the challenged forfeiture exceeded the Guidelines fine, because the forfeiture was "well below" the statutory maximum); *Varrone*, 554 F.3d at 332 ("[I]f the value of forfeited property is within the range of fines prescribed by Congress, a strong presumption arises that the forfeiture is constitutional." (quoting *United States v. 817 N.E. 29th Drive, Wilton Manors, Fla.*, 175 F.3d 1304, 1309 (11th Cir. 1999))).

*Fourth*, we consider "the nature of the harm caused by [Viloski's] conduct." *Castello*, 611 F.3d at 123 (internal quotation marks omitted). The District Court found that the conspiracy in which Viloski participated inflicted "extensive harm" on DSG and "various landlords, real estate developers, investors, property owners, and others involved in the development of new DSG stores." *Viloski*, 53 F. Supp. 3d at 531. We see no reason to second-guess that factual finding.

Finally, we address whether the challenged forfeiture would deprive Viloski of his livelihood. Although Viloski bears the burden

19

of showing the unconstitutionality of the forfeiture, *see Castello*, 611 F.3d at 120, he has presented no evidence that it would prevent him from earning a living upon his release from prison.[17] Instead, he urges us to consider "compelling personal factors concerning [his] age, health and dire financial circumstances." Def. Br. 8. But as we emphasize above, these factors are irrelevant in themselves. We consider them only insofar as they, in conjunction with the challenged forfeiture, would deprive a defendant of his livelihood. Viloski has offered no reason to think that the challenged forfeiture would have such an effect.

Accordingly, because the four *Bajakajian* factors support the conclusion that the forfeiture is not grossly disproportional to the gravity of Viloski's offenses, and Viloski has failed to establish that the forfeiture would deprive him of his livelihood, we reject as

---

[17] Viloski's appellate brief summarizes discussions in *Bajakajian* and *Levesque*, 546 F.3d at 83–85, regarding Magna Carta's protection of an offender's livelihood, but he never applies those discussions to his own case. *See* Def. Br. 12–13. Viloski also failed to present any facts to the District Court—or to make any argument at all—regarding his livelihood. *See* Def. Submissions on Remand, App. 173–91. Accordingly, our review is for "plain error" only. *See United States v. Ubiera*, 486 F.3d 71, 74 (2d Cir. 2007); *see also United States v. Messina*, 806 F.3d 55, 65 (2d Cir. 2015) (noting that plain-error review requires "showing of (1) error, (2) that is clear or obvious, (3) affecting appellant's substantial rights, which in the ordinary case means affecting the outcome of the district court proceedings, and (4) seriously affecting [the] fairness, integrity or public reputation of judicial proceedings") (internal quotation marks, ellipsis, and alteration omitted)). Nonetheless, because Viloski has adduced no facts at all suggesting that the challenged forfeiture would deprive him of his livelihood, we would come to the same conclusion even under *de novo* review.

meritless Viloski's Eighth Amendment challenge to the forfeiture order. We also decline to review Viloski's remaining claims, which are not properly before us.[18]

## III. CONCLUSION

To summarize, we hold as follows:

(1) A punitive forfeiture violates the Excessive Fines Clause of the Eighth Amendment if it is "grossly disproportional to the gravity of [the defendant's] offense." *United States v. Bajakajian*, 524 U.S. 321, 324 (1998).

    a. In determining whether a forfeiture is "grossly disproportional," courts may consider not only the four factors we have previously derived from *Bajakajian*,[19] but also whether the forfeiture would

---

[18] Viloski seeks to "preserv[e]" several "issues not before the present panel": (1) whether the challenged forfeiture was not authorized by statute, because (a) the money at issue "was not possessed by . . . Viloski as proceeds of crime," (b) "proceeds of mail fraud not affecting a financial institution are not criminally forfeitable," (c) "no applicable statute authorizes a 'money judgment' forfeiture," or (d) no statute authorizes "'joint and several forfeiture'"; and (2) whether joint and several liability for the forfeiture "violated the Fifth and Sixth Amendments because the indictment did not name that property as forfeitable." Def. Br. 2. Because Viloski concedes that these issues "are not open for decision at this time, or . . . are precluded . . . by controlling precedent," *id*. at 31, there is no need to address them here.

[19] These factors are

---

21

deprive a defendant of his "livelihood," *i.e.*, his future ability to earn a living.

   b. Courts should not consider a defendant's personal circumstances—such as age, health, or present financial condition—when making a proportionality determination, except insofar as they are relevant to determining whether a forfeiture would deprive a defendant of his livelihood.

(2) The forfeiture imposed on Viloski was not grossly disproportional to the gravity of the offenses for which it had been imposed.

   a. Viloski failed to meet his burden of showing that the challenged forfeiture would deprive him of his livelihood.

   b. The remaining factors described by *Bajakajian* weigh in favor of the forfeiture's constitutionality.

For the foregoing reasons, we **AFFIRM** the District Court's order of October 16, 2014.

---

(1) the essence of the crime of the defendant and its relation to other criminal activity, (2) whether the defendant fits into the class of persons for whom the statute was principally designed, (3) the maximum sentence and fine that could have been imposed, and (4) the nature of the harm caused by the defendant's conduct.

*George*, 779 F.3d at 122 (quoting *Castello*, 611 F.3d at 120).