TOWN OF DARIEN *v*. STATE OF CONNECTICUT ET AL.

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and ROBERTS, Js.

Argued May 5—decided June 8, 1954

*Morgan P. Ames,* with whom were *Edward R. McPherson, Jr., Edward F. Snyder* and, on the brief, *Raymond E. Hackett,* for the plaintiff.

*Louis Weinstein,* assistant attorney general, with whom, on the brief, was *William L. Beers,* attorney general, for the defendant.

INGLIS, C. J. In this action the plaintiff town seeks to recover from the state a share of a penalty tax which it claims should have been collected by the state from the estate of James A. Trowbridge even though, by reason of a compromise agreement between the state and the executors of Trowbridge's will, no penalty tax was actually collected. The case comes to this court by reservation.

The stipulated facts, so far as they are necessary for our decision of the crucial questions propounded, are the following: James A. Trowbridge died on May 30, 1931. For more than five years prior to his

death he had been a resident of Darien. He left a will dated October 25, 1921, in which he described himself as a resident of the city and state of New York, and that will was admitted to probate in the Surrogate's Court in New York. He had business interests in New York and owned residential property there in which he occasionally stayed. The inventory of his estate listed bonds, mortgages and choses in action which, with the accrued interest thereon, were appraised at $8,609,173.83. All of these securities he had kept in a safe deposit box in New York, and he had never paid a tax on them either to the town of Darien or the state of Connecticut. The only property standing in his name in Connecticut was real estate appraised at $20,000.

By reason of the foregoing and other facts, the question arose between the taxing officials of New York and Connecticut whether the domicil of the decedent at the time of his death was New York or Connecticut. On October 1, 1931, the Connecticut board of finance and control adopted a resolution to the effect that "the claim of the State of Connecticut as to the domicile of James A. Trowbridge . . . involving ultimately death taxes in amounts now unascertained, payable to the State of Connecticut . . . be compromised" as follows: If the executors of Trowbridge's will would assist the state in bringing out before the proper courts all material facts pertaining to the domicil of the decedent at the time of his death, and if the final judicial determination is that his domicil was in Darien, Connecticut, the "State Treasurer is directed to receive from said executors, upon certificate of the Tax Commissioner, in full for all death taxes due the State of Connecticut from said estate (including inheritance, succession, estate and penalty taxes), an amount to be de-

termined by the sum of the two following (1) the inheritance and succession tax and (2) the estate tax as may be determined according to law." It was also voted, in a second paragraph, "[t]hat within one calendar year of the receipt thereof the State Treasurer shall remit to the town of Darien the sum of $           in lieu of said town's share of any penalty tax which might have been assessed." The discussion which led to the adoption of the resolution indicated that the sense of the meeting was that, although the compromise of the state's claim for all death taxes by a waiver of the penalty tax might impose a moral obligation to compensate Darien for its loss of a share of that tax, the board was not then ready to determine the amount, if any, of such compensation.

In December, 1931, the tax commissioner of Connecticut entered into an agreement with the executors of Trowbridge's will in accordance with the resolution of the board of finance and control, as that was supplemented in some details which are not important in the present litigation. Thereafter, the question of the decedent's domicil was litigated in the courts of New York and finally, on February 26, 1935, the Court of Appeals of that state decided that the decedent's domicil was in Connecticut. *Matter of Trowbridge*, 266 N.Y. 283, 194 N.E. 756. The town of Darien was not a party to and did not participate in the litigation. On May 31, 1935, the executors paid the treasurer of the state of Connecticut the sum of $942,147.06, and the treasurer issued his receipt for "the sum of $929,993.44 tax, together with the sum of $12,153.62 interest thereon . . . being in full for all death taxes due the State of Connecticut, from the Estate of said James A. Trowbridge, deceased, including inheritance, succession and es-

tate taxes and in lieu of penalty taxes, said amount being paid and received pursuant to compromise authorized and approved by the Board of Finance and Control of the State of Connecticut by vote passed at a meeting of said Board held October 1, 1931." The principal amount so received was the exact amount due the state on account of the inheritance, succession and estate taxes. Not until October, 1948, did the town of Darien know this payment had been made.

At a meeting of the board of finance and control on June 5, 1935, the second paragraph of the vote of October 1, 1931, was called to the board's attention and the question whether the state should pay anything to the town of Darien was considered. The discussion was to the effect that, inasmuch as the payment made by the executors did not include any amount on account of the penalty tax, the town was not entitled to receive any part of the payment. Accordingly, no action was taken with reference to the matter. The state has never paid the town any sum on account of a penalty tax paid or payable on the Trowbridge estate.

In October, 1936, the will of James A. Trowbridge was admitted to probate in the Probate Court for the district of Darien, and thereafter the estate was fully administered in that court. In the course of the administration, the executors inventoried bonds, mortgages and choses in action totaling more than eight and one-half million dollars and made a return to the tax commissioner showing that during the last completed tax period prior to the decedent's death no tax had been assessed on those intangibles by any town in the state, nor had any tax been paid thereon to the state during the year next preceding the death of the decedent. During the course of the

probate, no computation of a penalty tax on the estate was made by the tax commissioner.

In October, 1948, the officials of the town of Darien first learned of the proceedings with reference to the penalty tax on the Trowbridge estate and that the town might have a claim against the state on account thereof. A bill to authorize suit against the state was introduced in the 1949 legislature but failed of passage. A similar bill, however, was passed in 1951 (26 Spec. Laws 173), and this suit was started promptly thereafter.

The questions propounded in the reservation are set forth in the footnote.[1] In the view that we take of

---

[1] "1. Is the Town of Darien entitled to receive from the State of Connecticut by way of its statutory share of estate penalty tax any portion of the amount paid by the Executors of the Estate of James A. Trowbridge to the State of Connecticut?

"2. If the answer to question 1 is in the affirmative, how is the amount to be paid to the Town of Darien to be computed?

"3. Does the taxable property of a decedent's estate which is subject to the estate penalty tax provided for in Chapter 78 of the Connecticut General Statutes (Revision of 1930) include interest on such property accrued to the date of decedent's death?

"4. If the answer to question No. 1 is in the affirmative, is the Town of Darien chargeable with any portion or share of the expenses incurred by the State of Connecticut in the New York litigation, and if so, how is its portion or share to be determined?

"5. If the answer to question No. 1 is in the affirmative, is the Town of Darien entitled to interest on the amount due it, and if so, at what rate and from what date is interest to be computed?

"6. Did Section 165 of the General Statutes (Rev. of 1930) empower the State Board of Finance and Control to compromise in whole or in part the Town of Darien's claim to its statutory share of the estate penalty tax on the Estate of James A. Trowbridge, and if so, did said Board of Finance and Control effectively compromise the Town's claim in whole or in part?

"7. Does the six-year Statute of Limitations bar the Town's right of action to recover its share of the estate penalty tax?

"8. Was the Town guilty of laches in asserting its claim, and if so, does this bar the claim?

"9. Was the Town guilty of an unconscionably long and inexcusable

the matter, it will be necessary to discuss only question 1 and, incident to that, question 6. In other words, our answer to the question whether the town of Darien is entitled to receive from the state by way of its statutory share of the estate penalty tax any portion of the amount paid by the Trowbridge estate will be an adequate guide to the Superior Court in rendering final judgment in the case.

The statutes controlling the decision of this question are §§ 1402-1409, comprising chapter 78 of the 1930 Revision (as amended, Rev. 1949, c. 103). These sections provided for the estate penalty tax and for its assessment and collection. In referring to them, we will have to use the past tense because they have now been repealed. General Statutes, Cum.Sup. 1953, § 939c. In substance, they first directed executors and administrators to furnish the state tax commissioner with information from which he could ascertain what property of the decedent had escaped the payment of taxes both to the towns and to the state prior to the death of the decedent. The tax itself was imposed by § 1403, which read: "All taxable property of any estate upon which no town or city tax has been assessed [during the last completed taxing period] or upon which no tax has been paid to the state during the year preceding the date

delay in asserting its claim, and if so, does this bar the claim?

"10. If the Town of Darien is entitled to receive from the State of Connecticut by way of its statutory share of estate penalty tax any portion of the amount paid by the Executors of the Estate of James A. Trowbridge to the State of Connecticut, in what manner and under what conditions shall said amount be determined and adjudicated, and what duties and acts are required to be performed and discharged by the officials of the Town and the State in order to effectuate said payment?

"11. Are the defenses of the statute of limitation, laches and unconscionable delay barred by concealment of the cause of action under the stipulated facts?"

of the death of the decedent, shall be liable to a tax of two per centum per annum on the appraised inventory value of such property for the five years next preceding the date of the death of such decedent; but the executor or administrator of any estate may, by furnishing evidence to the satisfaction of the tax commissioner that a state, town or city tax has been paid on any of such property for a portion of said five years, or that the ownership of such property has not been in the decedent for a portion of said period, obtain a proportionate deduction from the tax hereby imposed."

Section 1406 directed that the penalty tax be paid to the state treasurer. The only provision by which cities or towns shared in the tax was contained in § 1409: "The treasurer shall retain a portion of the tax imposed under the provisions of this chapter equivalent to a tax at the rate of four mills per annum on the value of such property for the use of the state, and shall pay to the treasurer of the town or of the consolidated town and city or of the consolidated town and borough in which the decedent last resided the remainder of the tax so collected." From this it appears that a town was entitled to a share in only so much of the penalty tax as was actually collected by the state.

In the present case, the essence of the compromise agreement between the state and the Trowbridge estate was that the entire penalty tax was waived. No penalty tax was ever collected. So far as the express terms of § 1409 are concerned, therefore, there was nothing to which the town of Darien was entitled. The town seeks to avoid this conclusion by two lines of argument. The first is that the board of finance and control had no authority to bind the state by the compromise agreement. The second is that

the town had such a vested interest in a share of the penalty tax imposed by law that the state could not defeat it by waiving the tax.

The first of these arguments may be quickly disposed of. Section 165 of the General Statutes, Rev. 1930, provided: "The board of finance and control may authorize the compromise of any disputed claim by or against the state or any department thereof...." The state had a claim against the Trowbridge estate for inheritance, succession, estate and penalty taxes. The validity of that claim was disputed. It depended upon the domicil of the decedent. The action of the board of finance and control was in essence that if the executors would assist the state in its proof that the decedent was domiciled in Connecticut, the state would waive the penalty tax and accept in full settlement of its claim the amount found to be due on account of all other death taxes. This clearly was a compromise of the state's claim against the estate. It follows that the action of the board was within the authority conferred upon it by § 165. The plaintiff gains nothing from the fact that by virtue of § 1391 of the 1930 Revision the tax commissioner also had power to effect settlements of succession and transfer taxes under certain conditions, since the tax commissioner himself participated in the settlement agreed upon with the Trowbridge estate. Nor is it of any significance in the present matter that the General Assembly in 1937 authorized the commissioner of finance and control to abate any tax due the state which proved to be uncollectible; Cum. Sup. 1939, § 55e (Rev. 1949, § 248); and in 1949 specifically granted the tax commissioner, upon the approval of the attorney general, power to abate penalty taxes. Sup. 1949, § 228a. The fact that these later changes were made does not in-

dicate that as the law stood in 1931 there was any limitation on the broad power conferred upon the board of finance and control to compromise "any disputed claim by or against the state." We cannot say that the action of the board in so compromising the state's claim against the Trowbridge estate was an arbitrary exercise of its discretion. As will be pointed out later in the opinion, the town of Darien had no property right in the estate penalty tax. For that reason it was not deprived of its property in violation of either the state or the federal constitution, as it contends.

The plaintiff's second line of argument is more worthy of consideration. It is that although the express terms of § 1409 of the 1930 Revision allowed the towns to share in only such penalty tax as was actually collected, the imposition of the tax by § 1403 in itself gave the town a vested interest in 80 per cent of the tax imposed. Accordingly, it contends that as regards the town's share of the tax the state acted simply as the town's agent to collect and, therefore, had no power to waive it.

In order to pass upon the validity of this claim, the nature of the penalty tax must be borne in mind. Light is thrown upon that by a consideration of the purposes of the enactment. Originally, all property with some exceptions and exemptions was taxable in the towns. Much personal property, both tangible and intangible, however, escaped taxation because it was difficult to locate. To meet this situation in part, the General Assembly enacted in 1889 a tax on choses in action. Public Acts 1889, c. 248, § 9. Under this enactment, a person by paying to the state a tax of two mills, later made four mills, on the face value of his choses in action would procure exemption from local taxation on those choses in

action. In spite of this provision, it was a matter of common knowledge that a large amount of personal property, particularly choses in action, continued to escape taxation. Although it was obviously to the advantage of the owner of choses in action to pay the state tax thereon rather than the higher millage which he would have to pay to the local governments by way of the property tax, there was still no way in which he could be effectively compelled to pay either.

It was in the light of these conditions that the estate penalty tax was enacted in 1915. Public Acts 1915, c. 293. Clearly, therefore, the purpose of it was to hold a threat over property owners to induce them to list their property for taxation as the law required. And specifically, inasmuch as choses in action constituted the class of property as to which tax evasion was easiest and most prevalent, the state penalty tax was designed, perhaps primarily, to induce the payment of the state tax on choses in action.

That being the purpose of the act, it is apparent that the intent of the legislature in enacting it was to punish those persons who had evaded the tax duty which they owed to the town and to the state, but particularly to the state. The imposition of the penalty tax could not have been intended essentially as a means of providing reimbursement to either the towns or the state for taxes which had been lost. The rate of tax, i.e., 2 per cent per annum, bore no relation to the rates of tax imposed by the towns as property taxes or by the state as taxes on choses in action. Moreover, the penalty tax was imposed whether or not the property upon which it was assessed would actually have been taxed by the town of which the decedent was a resident.

*Stoddard* v. *Corbin,* 94 Conn. 543, 545, 109 A. 813.

The theory of the tax was that it was not so much a revenue producer as a penalty imposed for a failure on the part of the decedent to comply with the law during his lifetime. As we said in *Bankers Trust Co.* v. *Blodgett,* 96 Conn. 361, 366, 114 A. 104: "The pecuniary liability imposed by this Act is a penalty in the nature of a tax for an omission to list property for taxation. Punishment is the end of a penalty. . . . The wrong sought to be redressed by this tax is a wrong which has been done the public treasury. The necessities of government give the State the right to tax property for such purposes and in such amounts as it may determine . . . and with the power to tax must go the power to enforce collection of the tax by all summary means not contrary to the Constitution, and one of those means is the right to impose penalties in order to compel payment and as a punishment for evasion or neglect of this duty owed the public."

The estate penalty tax was a state, not a local, tax. It is significant that § 1406 of the Revision of 1930 read that when such a tax should be found "due the state" it should be "paid to the state treasurer." There was nothing in the sections of the act relating to the imposition and collection of the tax which gave any indication of an intention that the towns should have any financial interest in or right to the tax. In this regard it was quite different from the tax imposed on shares of stock in insurance companies, to which the plaintiff turns for analogy. See *Gilpatric* v. *Hartford,* 98 Conn. 471, 481, 120 A. 317. In the act imposing that tax, it was made perfectly plain that it was not a penalty but was levied and collected by the state solely for the benefit of the respective towns in which the owners of insurance

company stock resided. Rev. 1930, §§ 1272, 1275. There is no analogy between the two taxes.

To summarize: The estate penalty tax was a state tax. It was not designed to provide reimbursement for taxes lost either by the state or by the towns. It was a tax imposed purely as a penalty for failure to comply with the law. No town or city had the right to enforce the penalty. That right rested exclusively with the state. Accordingly, up to the time the tax was collected, no town or city had any substantive right to it. True it is that § 1409 of the Revision of 1930 made provision for a distribution of the amount of the tax collected. By virtue of that section, a town gained the right to share in the proceeds of the collection. That right, however, was conditioned on some amount being collected and, therefore, sprang into existence only in the event that a collection was made. Consequently, no town had any vested right in or to the tax until after it was collected. Until that time, the right to the tax was exclusively in the state. As to the enforcement of the tax, the state under the statute acted in its own right and in no sense as the agent of a town. It follows that it was competent for the state to waive the tax in toto in connection with the effecting of a compromise.

Question 1 in the reservation is answered in the negative; question 6, in the affirmative. It is not necessary to answer the other questions.

No costs will be taxed in this court in favor of any party.

In this opinion the other judges concurred.