BRITTANY FARMS HEALTH CENTER, INC. *v.*
ADMINISTRATOR, UNEMPLOYMENT
COMPENSATION ACT

LOISELLE, BOGDANSKI, LONGO, PETERS and SPONZO, Js.

Argued February 8—decision released April 24, 1979

*Wesley W. Horton,* with whom, on the brief, was *F. Timothy McNamara,* for the appellant (plaintiff).

*Thomas J. Daley,* assistant attorney general, with whom, on the brief, was *Carl R. Ajello,* attorney general, for the appellee (defendant).

BOGDANSKI, J. This case involves an appeal from a decision of the administrator of the Unemploy-

ment Compensation Act assigning the maximum rate of contribution to the plaintiff employer for calendar year 1977 on the ground that the plaintiff failed to pay its unemployment compensation contribution for the second calendar quarter of 1976 when due.

The facts in this case are not in dispute. The plaintiff has been subject to the Unemployment Compensation Act; §§ 31-222—31-274g inclusive (hereinafter the act); since January, 1972. Under the terms of this act, the plaintiff's contribution for the second quarter of 1976 was payable no later than July 31, 1976. See General Statutes § 31-225 (a), (b) and (c). Although the plaintiff timely filed a quarterly report of wage information as required by § 31-225g, it did not make payment of the second quarter's contribution until November 9, 1976—some forty-four days after the statutory deadline. Pursuant to § 31-225a (c) (1), which provides that "[a]ny employer who has failed to meet the reporting and payment requirements of this section shall make contributions at the maximum rate provided for in this section," the administrator assigned the plaintiff a contribution rate of 6 percent, the maximum rate provided for in the act. Prior to reclassification the plaintiff had been in a 1.7 percent rate category.

After its appeal to the Superior Court was dismissed, the plaintiff petitioned for certification to this court, which was granted. On appeal to this court the plaintiff argues (1) that § 31-225a (c) (1) is a penal statute and must, therefore, be strictly construed, with all ambiguities in the statute being resolved in its favor; and (2) that the administrator

erred in determining that the plaintiff was within the class to which subsection (c) (1) of § 31-225a is applicable.

The administrator, however, asserts that subsection (c) (1) of § 31-225a must be read together with § 31-225 of the act in order to achieve an operative and harmonious whole, and that the plaintiff was properly assigned the maximum contribution rate under the statute.

It has long been settled that the Unemployment Compensation Act is a remedial enactment designed to relieve the distress of unemployment and that it is to be liberally construed in order to accomplish its primary purpose. *New Haven Market Exchange, Inc.* v. *Administrator,* 139 Conn. 709, 712, 97 A.2d 262 (1953). On its face, subsection (c) (1) of § 31-225a appears designed to safeguard the solvency of the unemployment compensation fund by ensuring that payments to the fund will be made when due. That this provision, in fact, operates to penalize an employer who fails to make payments on time is clear from the facts of the present case in which the late payment by the plaintiff of approximately $4000 (the second quarterly contribution for 1976) resulted in a penalty of approximately $40,000 by reason of the reclassification of the employer's rate of contribution from its prior level of 1.7 percent to the maximum of 6 percent.

The plaintiff argues first that the severity of the penalty imposed upon it by this section is sufficient to render this provision confiscatory. We do not agree. We note in this regard that penalty provisions in taxing statutes are quite common and that such provisions, though often attacked as confisca-

tory, are almost always upheld by the courts. *Darien v. State,* 141 Conn. 336, 347, 106 A.2d 181 (1954); *Bankers Trust Co.* v. *Blodgett,* 96 Conn. 361, 367, 114 A. 104 (1921); *Western Union Telegraph Co.* v. *Indiana,* 165 U.S. 304, 17 S. Ct. 345, 41 L. Ed. 725 (1897). In *Hartford Fire Ins. Co.* v. *Brown,* 164 Conn. 497, 325 A.2d 228 (1973), for example, this court upheld the validity of a statute which resulted in a penalty of $320,000 for a tax payment that was made one or two days late.

In 1973, the unemployment compensation fund was bankrupt and the state had to borrow millions of dollars from the federal government in order to continue making benefits available to employees. That strong measures are required to safeguard the solvency of this fund is thus clear, and the necessity of ensuring that employers will make payments to the fund on time seems more than sufficient to justify the legislature in enacting a statute penalizing delinquent employers.

We emphasize, therefore, that if a provision, similar to that at issue in this case, were to be found in the act, as a separate section, entitled "penalty," we would have no difficulty in upholding the *validity*[1] of such a provision. There are, however, certain rules of statutory construction, clearly applicable on the facts of this case, which compel us to conclude that the imposition of the maximum rate of contribution upon the employer in this case cannot be sustained.

---

[1] Because the statute, as presently written, is silent on the issue of duration, ambiguity would remain as to whether the maximum rate assigned to an employer for a default applies for one quarter or for one year.

The statutory provision at issue in this case is the last sentence of subsection (c) (1) of § 31-225a. That sentence provides for the imposition of the maximum rate of contribution upon any employer "who has failed to meet the reporting and payment requirements *of this section* [i.e., § 31-225a]." (Emphasis added.) The only reporting or payment requirement to be found in § 31-225a, however, is the September 30 deadline which is contained in the extremely long and complicated first sentence of this subsection. This deadline, as far as we can determine, however, applies only to "an employer who has not been subject to this chapter for a period of . . . [three years]." Since the plaintiff has been subject to the act since at least 1972, it would seem not to be a member of the class to which this deadline or the sanction of subsection (c) (1) applies.

The administrator, however, contends that the sanction of subsection (c) (1) must be read in connection with the reporting and payment deadlines contained *elsewhere in the act, i.e.,* with the payment deadline set forth in § 31-225 (c) and with the reporting deadline contained in § 31-225g. While this may be what the legislature actually intended, it is well settled that it is the intention of the legislature as expressed in the language which it has used that is controlling. *Dana-Robin Corporation* v. *Common Council,* 166 Conn. 207, 221, 348 A.2d 560 (1974); *Lee* v. *Lee,* 145 Conn. 355, 358, 143 A.2d 154 (1958). Subsection (c) (1), by its terms, neither requires nor permits reference to other sections of the act. Under the circumstances, we have no alternative but to conclude that the administrator erred by reading into the penalty provision of subsection (c) (1) of § 31-225a the reporting and payments deadline found elsewhere in the act.

It is, moreover, well settled that to be valid a penal statute must be sufficiently certain so as to clearly delineate the conduct to which its proscriptions are addressed. *State* v. *Clemons,* 168 Conn. 395, 400, 363 A.2d 33, cert. denied, 423 U.S. 855, 96 S. Ct. 104, 46 L. Ed. 2d 80 (1975). As previously noted, the penalty provision at issue in this case is contained in § 31-225a of the act. Section 31-225a is a very lengthy, complex section composed of eight subsections and takes up approximately four and one-half pages in the General Statutes, as printed. The main thrust of this section overall is the setting up of something called an "employer benefit ratio." This ratio is designed to encourage stable employment by rewarding employers who do not have many layoffs, by including in the computation of an employer's rate of tax his benefit ratio, a factor which takes account of the employer's experience record for the three years immediately preceding.

Subsection (a) of § 31-225a has to do with the method of establishing the employer's experience record; subsection (b) has to do with "new employers," i.e., those subject to the act for less than three years. Subsection (c) (1) begins with a sentence which is 166 words long,[2] and which is virtually

---

[2] "[General Statutes] Sec. 31-225a. . . . (c) (1) For the purposes of this section, 'qualified employer' means each employer subject to this chapter, with the exception of employers subject to a flat entry rate of contributions under subsection (b) of this section and employers who make reimbursement payments in lieu of contributions whose experience record has been chargeable with benefits throughout the three consecutive years ending on such June thirtieth, provided an employer who has not been subject to this chapter for a period of the three-year chargeability requirement shall be deemed to have met this requirement if his experience rating record has been chargeable with benefits for a period of at least one year ending on June thirtieth and who on the following September thirtieth has filed all required contribution reports and has paid contributions and any interest due

incomprehensible—although its purpose seems to be to define the term "qualified employer," i.e., an employer for whom a benefit ratio may be calculated. Subsection (c) (2), in turn, provides that as of each June 30, the administrator shall calculate a benefit ratio for each "qualified employer," and sets forth the formula by which an employer's tax rate shall be calculated. Subsections (d) through (h) are irrelevant. Virtually buried within the above is the penalty provision upon which the administrator relied in imposing upon the plaintiff employer the maximum rate of contribution for a full calendar year. We find that the placement within the act of this provision is not sufficient to reasonably apprise those to whom it is directed of its proscriptions or of the conduct to which its proscriptions are addressed.

We conclude that the location within the act of the penalty provision of subsection (c) (1), when combined with the ambiguity arising from the language of this provision itself, are such that the imposition of the maximum rate of contribution upon the plaintiff in this case, in reliance upon that provision, cannot be sustained.

There is error in part, the judgment is set aside and the case is remanded for the rendition of a judgment returning it to the administrator to be proceeded with according to law.

In this opinion the other judges concurred.

---

on all wages so reported, and has paid any other contributions and interest assessed against him, unless an appeal from such assessment has been taken or the time for such appeal has not yet expired. Any employer who has failed to meet the reporting and payment requirements of this section shall make contributions at the maximum rate provided for in this section."