******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# SERAMONTE ASSOCIATES, LLC *v.* TOWN OF HAMDEN
## (AC 42770)

Bright, C. J., and Alvord and Oliver, Js.

*Syllabus*

Pursuant to statute (§ 12-63c (a)), the owner of real property used primarily for the purpose of producing rental income may be required to "annually submit to the assessor not later than the first day of June" certain rental income and expense information.

Pursuant further to statute (§ 12-63c (d)), an owner who fails to submit the information required by § 12-63c (a), shall be subject to a penalty "equal to a ten per cent increase in the assessed value of such property for such assessment year."

The plaintiff, an owner of several rental properties in the defendant town of Hamden, appealed from the judgment of the trial court, which upheld the decision of the defendant's Board of Assessment Appeals affirming a 10 percent penalty imposed by the defendant's assessor on the tax assessments of the plaintiff's properties pursuant to § 12-63c (d), as a result of the plaintiff's submission of required tax forms after June 1. The plaintiff sent the tax forms by first class mail to the assessor on May 31. It was undisputed that the assessor failed to receive the required forms by the June 1 deadline set forth in § 12-63c (a). The plaintiff claimed that the word "submit" as used in § 12-63c (a) was ambiguous and that the trial court was required, as a matter of law, to rule in its favor on the basis of the statute's ambiguity and also claimed that the imposition of the assessor's penalty violated the excessive fines clauses of both the federal and state constitutions. *Held*:

1. The trial court properly rendered summary judgment in favor of the defendant on the count of the complaint that alleged that the board improperly upheld the 10 percent penalty: the plaintiff could not prevail on its claim that the word "submit," as used in § 12-63c (a), essentially means "to mail," as the word "submit," when viewed in the context of other tax statutes, was unambiguous and meant that the assessor must receive the forms by June 1; the legislature's decision not to include the phrase "or postmarked" in § 12-63c (a) was dispositive, meaning that those forms must be delivered to the assessor's office by June 1 in order to comply with the statute..

2. The trial court properly granted the defendant's motion to strike the plaintiff's constitutional claims: the excessive fines clause of the eighth amendment to the United States constitution did not apply to the 10 percent penalty in § 12-63c (d), as that penalty was not punitive within the meaning of the eighth amendment, and, accordingly, the plaintiff's alleged violations of the eighth amendment necessarily failed; moreover, under the state constitution, the 10 percent penalty in § 12-63c (d) was not a fine that subjected it to the excessive fines clause and, even if this court assumed that the clause applied, the court was not persuaded that the 10 penalty was unconstitutionally excessive under the facts of the case and controlling Connecticut precedent.

Argued October 15, 2020—officially released February 2, 2021

*Procedural History*

Appeal from the decision of the defendant's Board of Assessment Appeals denying the plaintiff's appeal of a penalty imposed by the defendant's assessor and added to tax assessments on certain of the plaintiff's real properties, and for other relief, brought to the Superior Court in the judicial district of New Haven, where the court, *S. Richards, J.*, granted the defendant's motions for summary judgment and to strike, and rendered judgment for the defendant, from which the plain-

tiff appealed to this court. *Affirmed.*

*Brenden P. Leydon*, for the appellant (plaintiff).

*Zachary J. Phillips*, with whom was *Adam J. Blank*, for the appellee (defendant).

*Opinion*

OLIVER, J. The plaintiff, Seramonte Associates, LLC, appeals from the judgment of the trial court granting summary judgment in favor of the defendant, the town of Hamden, as to count one of the plaintiff's complaint and granting the defendant's motion to strike the plaintiff's constitutional claims in count two. On appeal, the plaintiff claims, with respect to count one, that the court erred in holding that the word "submit" as used in General Statutes § 12-63c requires that certain tax forms have to be *received* by the defendant by June 1, and, with respect to count two, that the court erred in granting the defendant's motion to strike, because the penalty imposed for the plaintiff's late submission of the tax forms amounts to a fine that violates the excessive fines clauses of the federal and the state constitutions. We disagree and, accordingly, affirm the judgment of the trial court.

The following undisputed facts and procedural history, as set forth by the trial court in its memorandum of decision and otherwise gleaned from the record, are relevant to the plaintiff's claims on appeal. The plaintiff was the owner of certain parcels of rental property located in Hamden known as 520 Mix Avenue, 609 Mix Avenue, and 617 Mix Avenue (properties). On February 1, 2016, the assessor for the defendant assessed those properties at $15,683,080 for 520 Mix Avenue, $2,927,890 for 609 Mix Avenue, and $10,521,560 for 617 Mix Avenue. Pursuant to § 12-63c (a), the plaintiff was required to "submit to the assessor not later than the first day of June" certain tax forms.[1] The assessor sent the required forms to the plaintiff, and the cover letter to those forms stated: "It should be clearly understood that if the attached report is not completed and submitted to the [a]ssessor's [o]ffice by June 1, 2016, it will result in a 10 [percent] penalty being applied to your assessment per [§ 12-63c]." Additionally, the cover letter stated that "[s]ubmission means this form is physically in the [a]ssessor's office by 4:30 on June 1, 2016, faxes, e-mails and postmarks will not be accepted." The plaintiff sent the required forms to the assessor by first class mail on May 31, 2016, and it is undisputed that the assessor received them on June 2, 2016. Because the required forms were not received on or before June 1, the assessor, pursuant to § 12-63c (d), imposed a 10 percent penalty, amounting to $132,145.16, that was added to the assessments of the properties.

On September 28, 2016, pursuant to General Statutes § 12-119,[2] the plaintiff commenced by service of process an appeal in the Superior Court claiming that the valuation of the properties, which included the 10 percent penalty, was excessive. Pursuant to General Statutes § 12-111,[3] the plaintiff also timely appealed to the defendant's Board of Assessment Appeals (board) the assessor's imposition of the 10 percent penalty. The plaintiff

appeared before the board on March 2, 2017, and, on March 21, 2017, the board issued its decision denying the plaintiff's appeal.

On February 27, 2017, the plaintiff filed a withdrawal form in the Superior Court, stating that it was withdrawing its claim insofar as it alleged excessive assessments, and that it was proceeding with its claim insofar as it concerned the impropriety of the 10 percent penalty added to the assessments. On March 27, 2017, the defendant filed a motion for summary judgment, and, on April 26, 2017, the plaintiff filed a motion for summary judgment.

On May 1, 2017, the plaintiff filed an amended complaint (operative complaint) to clarify, in part, its February 27, 2017 withdrawal form. In the operative complaint, the plaintiff alleged, in count one, that the board improperly had upheld the assessor's imposition of the 10 percent penalty and, in count two, that the penalty was unconstitutional under the excessive fines clauses of both the federal and the state constitutions. See U.S. Const., amend VIII; Conn. Const., art. I, § 8. On July 3, 2017, the defendant filed a motion to strike count two of the plaintiff's operative complaint on the ground that it failed to state a claim on which relief could be granted, arguing that the excessive fines clauses of both the federal and the state constitutions do not apply to tax penalties.

On December 21, 2017, the defendant filed a new motion for summary judgment as to count one of the plaintiff's operative complaint. The defendant argued that it properly had imposed the 10 percent penalty pursuant to § 12-63c, because the plaintiff failed to submit its income and expense report to the defendant by June 1, 2016. The plaintiff argued in its own motion for summary judgment that the defendant's interpretation of § 12-63c was legally incorrect. On February 5, 2019, the court denied the plaintiff's April 26, 2017 motion for summary judgment, and it granted the defendant's December 21, 2017 motion for summary judgment as to count one of the plaintiff's operative complaint. In its memorandum of decision on the motions for summary judgment, the court recognized that the word "submit" is not defined in § 12-63c, and it reasoned that, because different dictionary definitions of "submit" could support either party's interpretation, the term was ambiguous. The court also determined that the statute's legislative history did not clarify the meaning of the word "submit." The court, however, explained that in *MSK Properties, LLC* v. *Hartford*, Superior Court, judicial district of New Britain, Docket No. CV-15-6029158-S (July 3, 2017) (64 Conn. L. Rptr. 747, 753–54), the Superior Court interpreted the language of the statute to mean that a town must *receive* the tax forms by June 1. Additionally, the court noted that, "in interpreting another tax statute, General Statutes § 12-41 (e) (1),

[the] Superior Court [has] held that 'file' [by November 1] as used in that statute, meant that the tax information had to be received by the town by November 1." See *SBC Internet Services, Inc.* v. *Bridgeport*, Superior Court, judicial district of Fairfield, Docket No. CV-06-6000408-S (February 14, 2008) (44 Conn. L. Rptr. 870, 871). Accordingly, the court granted the defendant's motion for summary judgment, holding that the word "submit," as used in § 12-63c, "means that the town must receive the tax forms by June 1 of each year."

Also on February 5, 2019, in a separate memorandum of decision, the court granted the defendant's motion to strike count two of the plaintiff's operative complaint, agreeing with the defendant that the excessive fines clauses of both the federal and the state constitutions do not apply to tax penalties. With respect to the federal constitution, the court held that the tax penalty in § 12-63c is remedial, rather than punitive, because "it is imposed to ensure compliance with the timely payment of taxes and to deter delinquent payment of taxes, which could harm the government with additional expenses of ensuring compliance in collecting those taxes." Accordingly, because the federal excessive fines clause applies only to those forfeitures that may be characterized as "punitive"; see *United States* v. *Viloski*, 814 F.3d 104, 109 (2d Cir. 2016), cert. denied,      U.S.      , 137 S. Ct. 1223, 197 L. Ed. 2d 462 (2017); the court held that the federal excessive fines clause did not apply.

With respect to the state constitution, the court held that the 10 percent penalty in § 12-63c is not a "fine" within the meaning of the excessive fines clause. The court relied on the definition of "fine" set forth in *Bankers Trust Co.* v. *Blodgett*, 96 Conn. 361, 368, 114 A. 104 (1921), aff'd, 260 U.S. 647, 43 S. Ct. 233, 67 L. Ed. 439 (1923), in which our Supreme Court stated that "[a] fine is a pecuniary punishment imposed by a lawful tribunal upon a person convicted of crime or misdemeanor." (Internal quotation marks omitted.) The court explained that the tax penalty in § 12-63c "is not punishment imposed due to conviction of a felony or a misdemeanor. Rather, it is a tool to ensure payment of the tax and punish evasion or neglect." Accordingly, the court concluded that the tax penalty is not a violation of the excessive fines clause of the state constitution.[4] The court rendered judgment on the second count of the plaintiff's operative complaint on March 18, 2019. This appeal followed.

I

The plaintiff first challenges the summary judgment rendered in favor of the defendant as to count one of its operative complaint and claims that the trial court erred when it held that the word "submit" as used in § 12-63c means that the defendant must receive the tax forms by June 1 of each year. Specifically, the plaintiff

argues that (1) the ordinary meaning of "submit" is "to send," and that, in the tax context, "timely mailing is timely filing," (2) the rule of lenity applies to civil penalties for alleged lateness, and, therefore, the statute should be strictly construed "and not extended by implication," and (3) because the court found that the word "submit" was ambiguous, a decision in favor of the taxpayer was compelled as a matter of law.

The defendant counters that "submit" means present, file, or formally deliver, arguing that "[i]n some tax settings the legislature has intended for the date of sending to be considered the date of filing or submission. Crucially, however, when the legislature so intends, it expresses that intent explicitly by adding words such as 'or postmarked' to the statute." With respect to the rule of lenity, the defendant argues that it applies "only if the statute remains ambiguous after all sources of legislative intent have been explored . . . [and that] [w]here, as here, after full resort to the process of statutory construction, there is no reasonable doubt as to the meaning of the statute, [the court] need not resort to the rule of lenity." Finally, the defendant argues that "strict construction neither requires nor permits the contravention of the true intent and purpose of the statute as expressed in the language used." The defendant claims that the statute is not ambiguous and, therefore, strict construction is inapplicable, arguing that the "plaintiff urges a construction that rewrites the statute and eschews its plain language by adding the words 'or [postmarked]' when the legislature intended to leave those words out." We agree with the defendant.

We begin with our standard of review. "The standard of review of motions for summary judgment is well settled. Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . .

"On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court. . . . Our review of the trial court's decision to grant [a moving party's] motion for summary judgment is plenary." (Internal quotation marks omitted.) *Smigelski* v. *Dubois*, 153 Conn. App. 186, 197, 100 A.3d 954, cert. denied, 314 Conn. 948, 103 A.3d 975 (2014).

Initially, we are called upon to determine the meaning

of the word "submit" in § 12-63c, which presents us with a question of statutory interpretation. "[I]ssues of statutory construction raise questions of law, over which we exercise plenary review. . . . The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Ugrin* v. *Cheshire*, 307 Conn. 364, 379–80, 54 A.3d 532 (2012).

The text of § 12-63c (a) provides in relevant part: "In determining the present true and actual value in any town of real property used primarily for purposes of producing rental income, the assessor . . . may require . . . that the owner of such property annually submit to the assessor not later than the first day of June, on a form provided by the assessor . . . the best available information disclosing the actual rental and rental-related income and operating expenses applicable to such property."

In the present case, the trial court concluded that, because the statute does not define "submit" and because dictionary definitions of "submit" could support either party's position, the word "submit," therefore, is ambiguous. In making that determination, the court discussed the statute's legislative history and certain Superior Court decisions. Pursuant to § 1-2z, however, we must consider both the text of a statute *and its relationship to other statutes* to determine whether it is ambiguous. See General Statutes § 1-2z ("[t]he meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes").

An examination of our tax statutes reveals that our legislature frequently includes the phrase "or postmarked" when it intends for the date of mailing to be considered the date of filing or submission. For example, General Statutes § 12-129 provides in relevant part that "[a]ny person, firm or corporation who pays any property tax in excess of the principal of such tax . . . may make application in writing to the collector of

taxes for the refund of such amount. Such application shall be delivered *or postmarked* by the later of [three events] . . . ." (Emphasis added). Similarly, General Statutes § 12-146 provides in relevant part that "[n]o tax or installment thereof shall be construed to be delinquent under the provisions of this section if . . . (B) the envelope containing the amount due as such tax or installment, as received by the tax collector of the municipality to which such tax is payable, *bears a postmark* showing a date within the time allowed by statute for the payment of such tax or installment." (Emphasis added). General Statutes § 12-41 (e) provides in relevant part: "(1) Any person who fails to file a declaration of personal property on or before the first day of November . . . shall be subject to a penalty equal to twenty-five per cent of the assessment of such . . . property . . . and (3) any declaration received by the municipality to which it is due that is in an envelope *bearing a postmark* . . . showing a date within the allowed filing period shall not be deemed to be delinquent." (Emphasis added). Other tax statutes contain similar language.[5]

Those statutes guide our conclusion that when the date of mailing is to be considered the date of filing or submission, our legislature includes language to that effect in the statute. At oral argument before this court, however, the plaintiff argued that those statutes are distinguishable because they use the word "file" as opposed to "submit." The plaintiff claims that the word "submit" essentially means "to mail," and, therefore, that the tax statutes that include the phrase "or postmarked" do not compel the conclusion that "submit," as used in § 12-63c, means that the defendant must *receive* the forms by June 1. We disagree.

Our legislature's use of the word "file" or the word "submit" does not bear on whether the forms to be filed or submitted must arrive at their destination, or merely be postmarked, by any certain date. Rather, the legislature's decision not to include the phrase "or postmarked", or other similar language that would define submit to include mailing, is dispositive. "[I]t is well settled that the legislature is always presumed to have created a harmonious and consistent body of law . . . . [T]his tenet of statutory construction . . . requires [this court] to read statutes together when they relate to the same subject matter . . . . Accordingly, [i]n determining the meaning of a statute . . . we look not only at the provision at issue, but also to the broader statutory scheme to ensure the coherency of our construction." (Internal quotation marks omitted.) *Felician Sisters of St. Francis of Connecticut, Inc.* v. *Historic District Commission*, 284 Conn. 838, 850, 937 A.2d 39 (2008). Accordingly, we conclude that, when viewed in the context of other tax statutes, all of which appear in title 12 of the General Statutes, the word "submit" as used in § 12-63c is unambiguous.[6] Section 12-63c provides that the forms must be submitted by June 1,

which means that, in the absence of any language to the contrary, those forms must be delivered to the assessor's office by that date in order to comply with the statute. There is no dispute in this case that the plaintiff's tax forms were not delivered to the defendant's assessor by the June 1 deadline.

Therefore, the trial court properly rendered summary judgment in favor of the defendant as to count one of the plaintiff's operative complaint.

## II

Next, the plaintiff claims that the trial court improperly granted the defendant's motion to strike its constitutional claims in count two of the operative complaint and rendered judgment thereon. Specifically, the plaintiff argues that, "[a]s a matter of proportionality and fundamental fairness, a penalty of over $130,000 for at worst being one day late with an ambiguous statutory time is grossly excessive" and, thus, the imposition of that penalty was a violation of both the federal and the state constitutions. With respect to the federal constitution, the plaintiff argues that the penalty was imposed, in part, to deter the delinquent payment of taxes. Citing *Austin* v. *United States*, 509 U.S. 602, 610, 113 S. Ct. 2801, 125 L. Ed. 2d 488 (1993), the plaintiff claims that "United States Supreme Court precedent has been clear that if civil sanctions are even in part serving a deterrent purpose they are subject to excessive fine analysis." With respect to the state constitution, the plaintiff characterizes the trial court's decision as hinging on whether the penalty was imposed due to conviction of a felony or a misdemeanor. The plaintiff argues that "[t]his analysis is incorrect and the Connecticut Supreme Court itself recognized in 1936 that an excessive 'fine' could include civil penalties." See *Second National Bank of New Haven* v. *Loftus*, 121 Conn. 454, 459–60, 185 A. 423 (1936). We are not persuaded by either of the plaintiff's arguments.

We begin with our standard of review. "The standard of review in an appeal from the granting of a motion to strike is well established. Because a motion to strike challenges the legal sufficiency of a pleading and, consequently, requires no factual findings by the trial court, our review . . . is plenary. . . . We take the facts to be those alleged in the complaint that has been stricken and we construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . . Thus, [i]f facts provable in the complaint would support a cause of action, the motion to strike must be denied. . . . [A] motion to strike is essentially a procedural motion that focuses solely on the pleadings. . . . It is, therefore, improper for the court to consider material outside of the pleading that is being challenged by the motion." (Citation omitted; internal quotation marks omitted.) *Dlugokecki* v. *Vieira*, 98 Conn. App. 252, 256, 907 A.2d 1269, cert. denied, 280 Conn. 951, 912 A.2d

483 (2006). "For the purpose of ruling upon a motion to strike, the facts alleged in a complaint, though not the legal conclusions it may contain, are deemed to be admitted. . . . A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged." (Citation omitted; internal quotation marks omitted.) *Metcoff* v. *Lebovics*, 123 Conn. App. 512, 516, 2 A.3d 942 (2010).

A

Federal Excessive Fines Clause

In order to determine whether a financial penalty is unconstitutional under the excessive fines clause of the eighth amendment to the federal constitution, courts rely on the two step inquiry established in *United States* v. *Bajakajian*, 524 U.S. 321, 328, 118 S. Ct. 2028, 141 L. Ed. 2d 314 (1998). At the first step, a court must determine whether the financial penalty constitutes a punishment and is, thus, a " 'fine' " within the meaning of the excessive fines clause. Id., 334. If it is determined that the penalty constitutes a punishment, the court then must proceed to the second step of the analysis and determine whether the challenged forfeiture is unconstitutionally excessive. Id.

With respect to the first step, the trial court, relying on *United States* v. *Viloski*, supra, 814 F.3d 109, noted that the excessive fines clause "applies only to those forfeitures that may be characterized, at least in part, as 'punitive'—i.e., forfeitures for which a defendant is personally liable." "In contrast, purely 'remedial' forfeitures—i.e., those in rem forfeitures intended not to punish the defendant but to compensate the [g]overnment for a loss or to restore property to its rightful owner—fall outside the scope of the [e]xcessive [f]ines [c]lause." *United States* v. *Viloski*, supra, 109. Additionally, the trial court explained that "[a] forfeiture does not constitute 'punishment' to the extent that it is remedial, such as where the amount of forfeiture is rationally related to the costs of enforcing the law and societal costs of the proscribed conduct . . . ."

The plaintiff argues that the penalty in the present case serves, in part, a deterrent purpose, and that under *Austin* v. *United States*, supra, 509 U.S. 602, a civil sanction is subject to the excessive fines clause if it is retributive or has a deterrent purpose. As the defendant correctly notes, however, that method of analysis was drawn from *United States* v. *Halper*, 490 U.S. 435, 448, 109 S. Ct. 1892, 104 L. Ed. 2d 487 (1989), which was abrogated by *Hudson* v. *United States*, 522 U.S. 93, 118 S. Ct. 488, 139 L. Ed. 2d 450 (1997). Indeed, in *Dept. of Revenue of Montana* v. *Kurth Ranch*, 511 U.S. 767, 114 S. Ct. 1937, 128 L. Ed. 2d 767 (1994), the United States Supreme Court held that "*Halper*'s method of determining whether the exaction was remedial or punitive simply does not work in the case of a tax statute. . . .

Subjecting [the tax] to *Halper*'s test for civil penalties is therefore inappropriate." (Citation omitted; internal quotation marks omitted.) Id., 784. The court noted that "neither a high rate of taxation nor an obvious deterrent purpose automatically marks this tax as a form of punishment." Id., 780. Nevertheless, it concluded that the tax at issue in that case *was* punitive. That conclusion, however, was compelled by the nature of the tax at issue. *Kurth Ranch* concerned a Montana statute that imposed a tax "on the possession and storage of dangerous drugs." Mont. Code Ann. § 15-25-111 (1987). The court explained that "this so-called tax is conditioned on the commission of a crime. That condition is significant of penal and prohibitory intent rather than the gathering of revenue . . . the tax assessment not only hinges on the commission of a crime, it also is exacted only after the taxpayer has been arrested for the precise conduct that gives rise to the tax obligation in the first place. Persons who have been arrested for possessing marijuana constitute the entire class of taxpayers subject to the Montana tax." (Internal quotation marks omitted.) *Dept. of Revenue of Montana* v. *Kurth Ranch*, supra, 781–82.

The 10 percent tax penalty in the present case lacks the obvious punitive and penal nature of the tax at issue in *Kurth Ranch*. It was not imposed during a criminal proceeding, and it does not require any conviction for imposition. Rather, as the trial court stated, "it is imposed to ensure compliance with the timely payment of taxes and to deter delinquent payment of taxes, which could harm the government with additional expenses of ensuring compliance in collecting those taxes." We conclude that the 10 percent penalty in § 12-63c is not punitive within the meaning of the eighth amendment to the federal constitution, and, therefore, it is not subject to the second step of the excessive fines clause analysis. The trial court properly did not reach the second step of *Bajakajian*, and the plaintiff's arguments to the contrary fail. Therefore, because the eighth amendment does not apply, the plaintiff's alleged violations of it in count two necessarily fail, and the granting of the motion to strike those claims in count two was proper.

B

Connecticut Excessive Fines Clause

Article first, § 8, of the Connecticut constitution provides that "[n]o person shall be compelled to give evidence against himself, nor be deprived of life, liberty or property without due process of law, nor shall excessive bail be required nor excessive fines imposed. . . ." Similar to its federal counterpart, Connecticut courts generally interpret the state constitution's excessive fines clause not to apply to tax penalties. See *Bankers Trust Co.* v. *Blodgett*, supra, 96 Conn. 369.

In *Bankers Trust Co.*, our Supreme Court held that a succession tax was not a "fine" such that it would be subject to the excessive fines clause. The court stated that "[t]he necessities of government give the [s]tate the right to tax property for such purposes and in such amounts as it may determine, subject only to such restrictions as may be imposed by the [c]onstitution, and with the power to tax must go the power to enforce collection of the tax by all summary means not contrary to the [c]onstitution, and one of those means is the right to impose penalties in order to compel payment and as a punishment for evasion or neglect of this duty owed the public." Id., 366. The court then concluded that the succession tax "does not impose an excessive fine in violation of [the excessive fines clause]. The term penalty in its broadest sense includes all punishment of whatever kind. . . . A fine is always a penalty, but a penalty may not always be a fine. . . . A fine is a pecuniary punishment imposed by a lawful tribunal upon a person convicted of crime or misdemeanor. . . . The offense here punished is neither a crime nor a misdemeanor, and the constitutional provision invoked has no possible relation to it." (Citations omitted; internal quotation marks omitted.) Id., 368. Likewise, in the present case, late submission of the tax forms required under § 12-63c is not a crime. Timely and accurate compliance with our taxation statutes is, rather, a duty owed the public, for which the legislature imposed a penalty in order to compel compliance and as a punishment for evasion or neglect of that duty. See *PJM & Associates, LC* v. *Bridgeport*, 292 Conn. 125, 145, 971 A.2d 24 (2009). Accordingly, the 10 percent penalty in § 12-63c is best construed as a penalty and not as a fine.

The plaintiff relies on *Second National Bank of New Haven* v. *Loftus*, supra, 121 Conn. 454, for the proposition that excessive fines can include civil penalties. In that case, our Supreme Court quoted *Bankers Trust Co.* v. *Blodgett*, supra, 96 Conn. 368, to define a fine as a "pecuniary punishment imposed by a lawful tribunal upon a person convicted of [a] crime or misdemeanor." (Internal quotation marks omitted.) *Second National Bank of New Haven* v. *Loftus*, supra, 459. It then stated that "[t]he meaning of the term ['fine'] in any connotation may not be extended, at most, further than to include a pecuniary penalty or forfeiture recoverable in a civil or criminal action." Id. However, the court explained that "the amount of the fine which the legislature may properly impose depends largely upon the object designed to be accomplished by the imposition of the fine, and the widest latitude is to be given to the discretion and judgment of the legislature in determining the amount of the fine necessary to accomplish that object." (Internal quotation marks omitted.) Id., 460 The court concluded that "[w]e would be very reluctant to say that the legislature had exceeded its powers in imposing excessive penalties, and ought not to do so

except in a very clear case." (Internal quotation marks omitted.) Id. This is not such a case.

The plaintiff argues that the tax penalty in the present case is grossly excessive and disproportionate to any harm the defendant suffered. Our Supreme Court, however, explicitly addressed that proportionality argument in *PJM & Associates, LC* v. *Bridgeport*, supra, 292 Conn. 145. While interpreting the same statute at issue in the present case, § 12-63c, our Supreme Court stated that "[t]he purpose of the penalty [in § 12-63c] is to compel the submission of information to assist the assessor in performing his duties. The fact that some property owners are subjected to a higher penalty than others is not unreasonable. . . . Finally, with respect to the magnitude of the penalty, we have stated that penalty provisions in taxing statutes are quite common and . . . such provisions, though often attacked as confiscatory, are almost always upheld by the courts." (Internal quotation marks omitted.) Id. The court noted that it previously had "upheld the validity of a statute [that] resulted in a penalty of $320,000 for a tax payment that was made one or two days late." (Internal quotation marks omitted.) Id., quoting *Brittany Farms Health Center, Inc.* v. *Administrator, Unemployment Compensation Act*, 177 Conn. 384, 387, 418 A.2d 52 (1979); see also *Hartford Fire Ins. Co.* v. *Brown*, 164 Conn. 497, 501, 325 A.2d 228 (1973).

We conclude that, under article first, § 8, of the Connecticut constitution, the 10 percent penalty in § 12-63c is not a "fine" that subjects it to our excessive fines clause. Indeed, we are not persuaded that the 10 percent penalty would be unconstitutionally excessive under the facts of this case and controlling Connecticut precedent even if we assume that our excessive fines clause applied. Accordingly, with respect to the allegations in count two of the operative complaint that the penalty was unconstitutional under article first, § 8, of the Connecticut constitution, the trial court's granting of the defendant's motion to strike count two was proper.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 12-63c provides in relevant part: "(a) In determining the present true and actual value in any town of real property used primarily for purposes of producing rental income, the assessor, which term whenever used in this section shall include assessor or board of assessors, may require in the conduct of any appraisal of such property pursuant to the capitalization of net income method, as provided in section 12-63b, that the owner of such property annually submit to the assessor not later than the first day of June, on a form provided by the assessor not later than forty-five days before said first day of June, the best available information disclosing the actual rental and rental-related income and operating expenses applicable to such property. Submission of such information may be required whether or not the town is conducting a revaluation of all real property pursuant to section 12-62. Upon determination that there is good cause, the assessor may grant an extension of not more than thirty days to submit such information, if the owner of such property files a request for an extension with the assessor not later than May first. . . .

"(c) . . . Any person claiming to be aggrieved by the action of the asses-

sor hereunder may appeal the actions of the assessor to the board of assessment appeals and the Superior Court as otherwise provided in this chapter.

"(d) Any owner of such real property required to submit information to the assessor in accordance with subsection (a) of this section for any assessment year, who fails to submit such information as required under said subsection (a) or who submits information in incomplete or false form with intent to defraud, shall be subject to a penalty equal to a ten per cent increase in the assessed value of such property for such assessment year. . . ."

[2] General Statutes § 12-119 provides in relevant part: "When it is claimed that a tax has been laid on property . . . [that] was computed on an assessment which, under all the circumstances, was manifestly excessive and could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of such property, the owner thereof . . . prior to the payment of such tax, may, in addition to the other remedies provided by law, make application for relief to the superior court for the judicial district in which such town or city is situated. Such application may be made within one year from the date as of which the property was last evaluated for purposes of taxation and shall be served and returned in the same manner as is required in the case of a summons in a civil action, and the pendency of such application shall not suspend action upon the tax against the applicant. In all such actions, the Superior Court shall have power to grant such relief upon such terms and in such manner and form as to justice and equity appertains, and costs may be taxed at the discretion of the court. If such assessment is reduced by said court, the applicant shall be reimbursed by the town or city for any overpayment of taxes in accordance with the judgment of said court."

[3] General Statutes § 12-111 provides in relevant part: "(a) Any person . . . claiming to be aggrieved by the doings of the assessors of such town may appeal therefrom to the board of assessment appeals. Such appeal shall be filed, in writing, on or before February twentieth. The written appeal shall include, but is not limited to, the property owner's name, name and position of the signer, description of the property which is the subject of the appeal, name and mailing address of the party to be sent all correspondence by the board of assessment appeals, reason for the appeal, appellant's estimate of value, signature of property owner, or duly authorized agent of the property owner, and date of signature. The board shall notify each aggrieved taxpayer who filed a written appeal in the proper form and in a timely manner, no later than March first immediately following the assessment date, of the date, time and place of the appeal hearing. Such notice shall be sent no later than seven calendar days preceding the hearing date except that the board may elect not to conduct an appeal hearing for any commercial, industrial, utility or apartment property with an assessed value greater than one million dollars. The board shall, not later than March first, notify the appellant that the board has elected not to conduct an appeal hearing. An appellant whose appeal will not be heard by the board may appeal directly to the Superior Court pursuant to section 12-117a. The board shall determine all appeals for which the board conducts an appeal hearing and send written notification of the final determination of such appeals to each such person within one week after such determination has been made. Such written notification shall include information describing the property owner's right to appeal the determination of such board. . . ."

[4] In its memorandum of decision on the defendant's motion to strike, the trial court stated: "Similar to the penalty in *Bankers Trust Co.*, this tax, although a penalty, is a 'fine.' " It is clear, however, on review of the memorandum of decision and its reliance on *Bankers Trust Co.*, that the trial court intended to conclude that the tax penalty was *not* a fine within the meaning of the Connecticut constitution, and that its omission of the word "not" was a scrivener's error.

[5] See, e.g., General Statutes § 12-39aa (a) (1) ("If any return . . . required to be filed with or any payment required to be made to the Department of Revenue Services within a prescribed period on or before a prescribed date under authority of any provision of the general statutes is, after such period or such date, delivered by United States mail to the Department of Revenue Services, *the date of the United States postmark* stamped on the cover in which such return . . . is mailed *shall be deemed to be the date of delivery or the date of payment* . . . ." (Emphasis added.)); General Statutes § 12-42 (a) ("Any person required by law to file an annual declaration of personal property may request a filing extension with the assessor of the municipality. Such request shall be made on or before the first day of November in writing.

. . . When the first day of November is a Saturday or Sunday, the declaration or extension request may be filed *or postmarked* the next business day following." (Emphasis added.)).

[6] The plaintiff claims that, because the trial court held that the word "submit" was ambiguous, judgment for the taxpayer was compelled as a matter of law. Because we conclude that "submit" as used in § 12-63c is unambiguous, the plaintiff's claim fails. Likewise, we agree with the defendant that the rule of lenity applies only if the statute remains ambiguous after all sources of legislative intent have been explored. Here, because the statute is unambiguous in the context of other tax statutes, the rule does not apply.